Francina Spivery-Jones v. In the Matter of the Receivership Estate of Trans Healthcare, Inc., et al., No. 66, Sept. Term, 2013

**APPEALS – STATUTORY APPEALABLE INTERLOCUTORY ORDER - ORDER DENYING MOTION TO VACATE RECEIVERSHIP**

An order denying an unsecured creditor's motion to vacate a receivership on the grounds that the circuit court lacked subject matter jurisdiction to appoint a receiver is not an appealable interlocutory order under Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.), permitting appeals from, *inter alia*, orders "appointing a receiver", because such an order does not designate a person or entity to act as a receiver.

**APPEALS – COLLATERAL ORDER DOCTRINE - ORDER DENYING MOTION TO VACATE RECEIVERSHIP**

An order denying an unsecured creditor's motion to vacate a receivership on the grounds that the circuit court lacked subject matter jurisdiction to appoint a receiver is not appealable under the collateral order doctrine, because whether the circuit court had jurisdiction to appoint a receiver is not effectively unreviewable on appeal from a final judgment.

Circuit Court for Baltimore County
Case No. 03-C-09-000141
Argued: March 6, 2014

IN THE COURT OF APPEALS OF
MARYLAND

No. 66

September Term, 2013

FRANCINA SPIVERY-JONES

v.

IN THE MATTER OF THE
RECEIVERSHIP ESTATE OF TRANS
HEALTHCARE, INC., et al.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
McAuliffe, John F.
(Retired, Specially
Assigned),
JJ.

Opinion by Battaglia, J.

Filed: May 19, 2014

This case presents us with an opportunity to explore the law of receiverships in Maryland and the appealability of an order denying a "motion to vacate receivership order for lack of subject matter jurisdiction and declare receivership order void *ab initio* and request for hearing", either as an interlocutory order, appealable under Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.),[1] or alternatively, as a collateral order.[2]

A "receivership" is a mechanism by which a court orders that property be placed in the control of a "receiver," or a "[a] disinterested person appointed by a court . . . for the protection" of the property. Black's Law Dictionary (9th ed. 2009). Maryland

---

[1] Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.), provides:

> A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:
>
> * * *
>
>   (3) An order:
>
> * * *
>
>   (iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

All references to Section 12-303 of the Courts and Judicial Proceedings Article ("Section 12-303") are to the Maryland Code (1974, 2006 Repl. Vol.), in effect at the time Ms. Spivery-Jones noted her appeal in this case. Section 12-303(3)(iv) remains unchanged. *See* Md. Code (1974, 2013 Repl. Vol.), § 12-303(3)(iv).

[2] The collateral order doctrine permits immediate appeals from orders that: "'conclusively determine the disputed question'; 'resolve an important issue'; are 'completely separate from the merits of the action'; and are 'effectively unreviewable on appeal from a final judgment.'" *Amer. Bank Holdings v. Kavanagh*, 436 Md. 457, 466, 82 A.3d 867, 872 (2013) (citations omitted).

recognizes two types of receiverships; a chancery receivership, the receivership which was developed in the chancery courts and which became part of our common law, as well as a statutory receivership that is "purely the creature[] of statutes and without which statutes no receiver could be appointed . . . ."  Ralph E. Clarke, *A Treatise on the Law and Practice of Receivers* 22 (1918).

Prior to 1868,[3] only "equitable" or "chancery" receiverships existed or those that had their genesis in the chancery courts of England.[4]  Clarke, *supra*, at 6, 18.  As initially created by the English chancery courts, the appointment of a receiver was a "remedy" designed to protect property that was subject to a claim between two parties from being dissipated, because injunctive relief had not proven to be effective.[5]  *Id.*  The chancery

---

[3] Section 189 of Chapter 471 of the 1868 Maryland Laws established:

> That if the court shall upon consideration of the bill, or of the bill, answers and proof, if any answers have been filed or proof taken, be of opinion that the corporation is insolvent, or that for any reason a dissolution of the said corporation will be beneficial to the stockholders, and not injurious to the public interests, a decree shall be entered dissolving the said corporation and appointing one or more receivers of estate and effects, and such corporation shall thereupon be dissolved; any of the Directors, Trustees, Managers or other officers, or any of the stockholders of any corporation, may be appointed its receivers, or such other person or persons as the courts may select.

[4] A chancery court was considered an equity court, notably depicted by Charles Dickens in *Bleak House*.   Charles Dickens, *Bleak House* (N.Y. 1853).

[5] While initially referred to as a "remedy" in the English chancery courts, describing a receivership as a "remedy" is a bit of a misnomer today, because remedy is defined

court would appoint a "receiver," who would act as an officer of the court and take possession or custody of the property to preserve it for the person or entity to which it was entitled. *Id.*

The first reported Maryland opinion to substantially discuss the law of receiverships, *Williamson v. Wilson*, 1 Bland 418 (Md. Ch. 1826), an opinion by the High Court of Chancery of Maryland, [6] traced the roots of the power to appoint a receiver back to the chancery courts of England. The authority to appoint a receiver in Maryland, therefore, was derived as part of Maryland's adoption of the English common law in

---

generally as "[t]he means of enforcing a right or preventing or redressing a wrong." Black's Law Dictionary (9th ed. 2009). As we will discuss in greater detail, *infra*, modern statutory receiverships in which the court appoints a receiver for the purposes of winding down the affairs of a corporation are not necessarily created to protect a right or prevent a wrong, but rather, to assist in the dissolution of the corporate entity.

[6] The Maryland High Court of Chancery, organized at the time of the Revolution, was modeled after England's High Court of Chancery and continued in existence until June 4th, 1854. William L. Marbury, *The High Court of Chancery and the Chancellors of Maryland*, Presentation to the Maryland State Bar Association at the 1905 Annual Meeting, *available at* http://aomol.msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/html/chancery.html (last visited May 16, 2014). The court was abolished when the 1851 Constitution was ratified and the circuit courts throughout the state were provided with concurrent equity and law jurisdiction. Frederick W. Invernizzi, *The Historical Development of the Maryland Courts* (1974). Throughout the court's existence, however, we retained appellate jurisdiction over the chancery court. Marbury, *supra*.

Although *Williamson* is the first reported Maryland opinion to substantially discuss the law of receiverships, we acknowledged the existence of the chancery court's authority to appoint a receiver in a partnership dispute in *dicta* in the case of *Yates v. Petty*, 1 H. & J. 58, 71 (1800).

3

existence in 1639.[7]   Such authority, apparently, had become "questionable" in the time

period between the adoption of the English common law and the High Court of Chancery's

opinion in *Williamson*.   *See id.* at 420.   The Chancery Court in *Williamson*, however, put

to rest any such doubts and was explicit that the appointment of a receiver was a power that

inhered to equity courts in Maryland:

> That this Court should have the power in unusual and pressing emergencies,
> at the instance of a party interested, effectually and without delay to put its
> hand upon property, so far as to prevent waste, inextricable confusion, or

---

[7] In *Baltimore Sun v. Baltimore,* 359 Md. 653, 661-62, 755 A.2d 1130, 1134-35 (2000), we explained the process by which Maryland adopted the English common law:

> In Maryland, "the rules of the common law of England were ... adopted as the principles which were to direct the proceedings of the provincial government, whether legislative or judicial...." Bozman, *History of Maryland,* Vol. 2, p. 97. This is evident as early as 1639, when the Maryland General Assembly approved the "Act for the Liberties of the People," which "may rightly be considered the first American Bill of Rights." B. Schwartz, *The Bill of Rights: A Documentary History,* Vol. 1, p. 67. The Act stated, in pertinent part, as follows (W.H. Browne, ed., *Archives of Maryland: Proceedings and Acts of the General Assembly of Maryland,* 1637/8–1664 (1883), Vol. 1, p. 41):
>
> > "all the Inhabitants of this Province ... Shall have and enjoy all such rights liberties immunities priviledges and free customs within this Province as any naturall born subject of England hath or ought to have or enjoy in the Realm of England by force or vertue of the common law or Statute Law of England (saveing in such Cases as the same are or may be altered or changed by the Laws and ordinances of this Province)."
>
> The rights embodied in the Act of 1639, specifically the right to the benefits of the common law of England, are presently embodied in Article 5 of the Maryland Declaration of Rights, originally enacted in August 1776.

total destruction, seems to be admitted by all to be clearly right, or at least highly beneficial.

*Id.* at 421.

Although the law applicable to receiverships continued to develop in the High Court of Chancery, this Court first had occasion to seminally explicate and apply the law applicable to the appointment of a receiver in *Blondheim v. Moore*, 11 Md. 365 (1857). In *Blondheim*, Moore sued Blondheim, alleging that Blondheim was heavily indebted and insolvent and that Blondheim had made a number of conveyances intended to delay and defraud his creditors. The complaint sought to set aside the allegedly fraudulent conveyances and also sought the appointment of a receiver. The circuit court appointed a receiver, and in considering the propriety of that decision, this Court looked to the "leading decisions"[8] of the chancery court, "wherein the doctrine applicable to the appointment of a receiver" was "clearly laid down" and derived the following principles:

> 1st. That the power of appointment is a delicate one, and to be exercised with great circumspection. 2nd. That it must appear the claimant has a title to the property, and the court must be satisfied by affidavit, that a receiver is necessary to preserve the property. 3rd. That there is no case in which the court appoints a receiver merely because the measure can do no harm. 4th. That "fraud or imminent danger, if the intermediate possession should not be taken by the court, must be clearly proved;" and 5thly. That unless the necessity be of the most stringent character, the court will not appoint until the defendant is first heard in response to the application.

---

[8] In *Blondheim v. Moore*, 11 Md. 365 (1857), we stated that the "leading decisions" on receiverships in the High Chancery Court were collected in *Thompson v. Diffenderfer,* 1 Md. Ch. Dec. 489 (1849); *Walker's Adm'r v. House,* 4 Md. Ch. Dec. 39 (1848); *Clark, et al., v. Ridgely, et al.,* 1 Md. Ch. Dec. 70 (1847).

*Id.* at 374. We determined, ultimately, that there were insufficient allegations of fraud to justify the appointment of a receiver and, thus, reversed the order of the Circuit Court for Baltimore City that had done so.

Since *Moore*, chancery receivers have been appointed in a myriad of situations, including partnership disputes, *Lust v. Kolbe*, 31 Md. App. 483, 356 A.2d 592 (1976), to collect rents and profits in a dispute between a mortgagor and a mortgagee, *Baker v. Baker*, 108 Md. 269, 70 A. 418 (1908), and even to preserve disputed properties in a divorce proceeding, *Greenpoint v. Schlossberg*, 390 Md. 211, 216, 888 A.2d 297, 300 (2005). Despite its diverse application, however, consistent with our pronouncement in *Blondheim*, the appointment of a chancery receiver has been limited to "extraordinary" circumstances, *Lipskey v. Voloshen*, 155 Md. 139, 144, 141 A. 402, 404 (1928), in which "there is fraud, danger of spoliation, or imminent prospect of loss or injury to property." *Del-Mar-Va Hardware Corp. v. Boss Mfg. Co.,* 230 Md. 477, 480, 187 A.2d 693, 694 (1963).

The legislative creation of the corporation posed a unique problem for courts in establishing receiverships, because a chancery or equity court could not dissolve a corporation absent statutory authority. *Mason v. Supreme Court of Equitable League*, 77 Md. 483, 484, 27 A. 171, 171 (1893); *see also* Clark, *supra*, at 236 (observing that a corporation "is created by the legislature and a court of equity without direct power by statute from the legislature has no power to wind up or dissolve that which the legislature has created."). As we explained in *Mason*, the appointment of a receiver by a court would effectively result in dissolution of the corporation, thereby accomplishing indirectly

6

what a judge had no direct authority to do:

> Apart from statutory power, a Court of equity cannot dissolve a corporation. "It is true," says Mr. *High* in his book on *Receivers*, (section 288,) "equity may properly compel officers of corporations to account for any breach of trust in their official capacity; yet, in the absence of statutes extending its jurisdiction, it will usually decline to assume control over the management of the affairs of a corporation upon a bill * * * * alleging fraud, mismanagement, and collusion on the part of the corporate authorities, since such interference would necessarily result in the dissolution of the corporation, and the Court would thus accomplish indirectly what it has no power to do directly."
>
> "The remedial power exercised by Courts of equity, in such cases, ordinarily extends no further than the granting of an injunction against any special misconduct on the part of the corporate officers; and, although the facts shown may be sufficient foundation for such an injunction, the Court will not enlarge its jurisdiction by taking the affairs of the corporation out of the management of its own officers, and placing them in the hands of a receiver."

*Mason*, 77 Md. at 484-85, 27 A. at 171; *see also Harford Agr. & Breeders' Ass'n v. Somerville,* 120 Md. 572, 87 A. 937, 940 (1913)*; Barton v. Fraternal Alliance*, 85 Md. 14, 36 A. 658 (1897).[9]

---

[9] In the same year we decided *Mason v. Supreme Court of Equitable League*, 77 Md. 483, 27 A. 171 (1893), we also determined that, under the proper circumstances, a court could appoint a receiver over a corporation, thereby leaving a corporate shell. In *Davis v. U.S. Elec. Power & Light Co.*, 77 Md. 35, 41, 25 A. 982, 984 (1893), stockholders of the United States Electric Power & Light Company of Baltimore City sued the Corporation, seeking the appointment of a receiver, alleging that, "the directors . . . have adopted a fraudulent policy, and are carrying it out by the fraudulent acts set out in the bill, and that if this policy be persisted in, ruin will soon overtake that company, and its stockholders will suffer the loss of the value of their stock." *Id.* at 41. We ultimately dismissed because the complaint failed to support an action for fraud:

> If these allegations are clearly proved, the Court would be enabled to decide a gross fraud was being perpetrated, **and it would have ample jurisdiction to take the affairs of the company from the control of the directors, and**

7

The Legislature did, however, empower courts to dissolve corporations and appoint receivers with the enactment of Section 189 of Chapter 471 of the Maryland Laws of 1868, which provided:

> That if the court shall upon consideration of the bill, or of the bill, answers and proof, if any answers have been filed or proof taken, be of opinion that the corporation is insolvent, or that for any reason a dissolution of the said corporation will be beneficial to the stockholders, and not injurious to the public interests, a decree shall be entered dissolving the said corporation, and appointing one or more receivers of estate and effects, and such corporation shall thereupon be dissolved; any of the Directors, Trustees, Managers or other officers, or any of the stockholders of any corporation, may be appointed its receivers, or such other person or persons as the courts may select.

Section 3-411 of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol.), now provides for the appointment of a receiver when a corporation chooses to voluntarily dissolve:

> (a) *Who may file petition.* – A director, stockholder, or creditor of a Maryland corporation which is dissolving voluntarily may petition a court of equity to take jurisdiction of the liquidation of the corporation.

---

> **place them in the hands of a receiver**, to be administered under the direction of the Court, according to the principles of law and equity.

*Id.* (emphasis added). Nevertheless, while such appointment, "through the sale of the corporation assets and distribution of the proceeds among creditors and stockholders, may be carried to such an extent as to result, if not in an absolute dissolution of the corporation, at least in a winding up of its affairs so as to leave nothing but a shell of an organization," the corporate entity itself could not be fully dissolved by the receiver absent a statutory grant of authority. Henry Tardy, *A Treatise on the Law and Procedure of Receivers* 764-66 (1920).

(b) *Power of court.* – After notice and hearing, the court for good cause shown may order the corporation liquidated under court supervision either by the directors or by one or more receivers appointed by the court.

(c) *Effect of appointment of receiver.* – The authority of the directors terminates when a court appoints a receiver.

Similarly, Section 3-414 of the Corporations and Associations Article [10] permits the

Circuit Court to appoint a receiver to, *inter alia*, dissolve and wind down the affairs of the

---

[10] Section 3-414 of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol.) provides in its entirety:

(a) *Scope of section.* – This section applies to any proceeding for involuntary dissolution of a corporation, except one brought under § 3-413(c) of this subtitle on grounds of insolvency.

(b) *Action by court.* – In a proceeding for the involuntary dissolution of a corporation, after notice and hearing, the court:

(1) May appoint one or more temporary receivers or trustees to take charge of the assets and operate the business of the corporation, if necessary or proper to preserve them, pending a final determination as to dissolution; and

(2) Shall determine whether the corporation should be dissolved.

(c) *Order of dissolution.* – If it appears that the corporation should be dissolved, the court shall enter a final order dissolving the corporation, and direct that it be liquidated under court supervision by one or more receivers appointed by it.

(d) *Powers of receiver or trustee.* – A receiver, temporary receiver, or trustee has all the powers of a receiver provided in this subtitle and any other powers provided in the order of the court, including the power to continue the corporate business.

(e) *Distribution of assets to stockholders.* – If it orders dissolution, the court may provide by order:

(1) For the distribution in kind of the assets of the corporation to the stockholders; or

(2) For some stockholders to receive assets of a different nature than other stockholders having the same type of interest.

corporation, should a petition be filed for involuntary dissolution:

> (b) *Action by court.* – In a proceeding for the involuntary dissolution of a corporation, after notice and hearing, the court:
>
> \* \* \*
>
> (2) Shall determine whether the corporation should be dissolved.
> (c) *Order of dissolution.* – If it appears that the corporation should be dissolved, the court shall enter a final order dissolving the corporation, and direct that it be liquidated under court supervision by one or more receivers appointed by it.
> (d) *Powers of receiver or trustee.* – A receiver, temporary receiver, or trustee has all the powers of a receiver provided in this subtitle and any other powers provided in the order of the court, including the power to continue the corporate business.

Receivers appointed pursuant to statutory authority to wind up the affairs of a corporation after dissolution, originally referred to as "liquidators" in England, are considered "statutory receivers", because their appointment exceeds that which generally was permitted in equity:

> **(m) Statutory Receivers,** as distinguished from equitable receivers, are those who are purely the creatures of statutes and without which statutes no receiver could be appointed, even by a chancery court or court having general chancery jurisdiction. The only true statutory receivers are liquidators, as the term is used in England, who are given power by the laws of England and by the laws of our own states, to wind up a corporation after it has been dissolved.

Clarke, *supra*, at 22; *see also Del-Mar-Va Hardware Corp.*, 230 Md. at 480, 187 A.2d at 694 (referring to the involuntary dissolution statute providing "statutory power to an equity court—which otherwise it would lack—to dissolve a corporation and thereafter appoint a receiver"); *Ghingher v. Pearson*, 165 Md. 273, 295, 168 A. 105, 113 (1933) (observing the

"creation of a statutory receivership for the liquidation of the affairs of an insolvent corporation and its dissolution as a corporation").

Since the inception of the statutory receivership, we have recognized the co-existence of chancery and statutory receiverships. In *Del-Mar-Va Hardware Corp.*, creditors of the Del-Mar-Va Hardware Corporation filed a complaint against the corporation seeking the appointment of a receiver pursuant to the predecessor statute to Section 3-114 of the Corporations and Associations Article, that being Article 23, Section 80 of the Maryland Code (1957),[11] which permitted a stockholder or creditor of an insolvent corporation to petition a court for involuntary dissolution and the appointment of a receiver. The trial court had appointed a receiver; we reversed, determining that the appointment was "legally unjustified." *Del-Mar-Va Hardware Corp.*, 230 Md. at 479, 187 A.2d at 694. We first determined that the receivership was not statutorily authorized, because there had been no proof of insolvency. We then opined that the trial court had not

---

[11] Section 80 of Article 23, Maryland Code (1957) provided:

> (a) *Petition to court; declaration of insolvency and appointment of receivers.*—Any stockholder or creditor of any insolvent corporation of this State, other than a railroad, may petition any court having equity jurisdiction in the county in which is located the principal office of the corporation in this State, to dissolve the corporation. If the corporation has been determined by judicial proceedings, or is proved to be, insolvent, the court may, for cause shown and within its sound judicial discretion, declare the corporation dissolved and, thereupon, the court shall appoint one or more receivers to liquidate the corporation under the supervision of the court. The court may appoint as receivers any persons it may select, including any directors, officers and stockholders of the corporation.

acted pursuant to its statutory authority to appoint a receiver, but rather, "its inherent power to appoint a receiver where there is fraud, danger of spoliation, or imminent prospect of loss or injury to property" and concluded that, the general creditors, who had brought the action lacked standing to seek the appointment of a receiver. *Id.* at 480, 187 A.2d at 694; *see also First Fed. Com. Trust Corp. v. Comm'r of Sec.*, 272 Md. 329, 335, 322 A.2d 539, 543 (1974) (observing the "circuit court's inherent *or* statutory power sitting in equity to issue an injunction or to decree the appointment of a receiver for an insolvent corporation" (emphasis added)).[12]

Although these types of receiverships continue to coexist, a statutory receivership does differ from a chancery receivership. A chancery receivership is ancillary to a dispute between two parties, which may or may not involve a corporate entity, and is entered to

---

[12] We would note, also, that the Maryland Rules distinguish between two types of receivers. *See* Rule 13-102 (stating that the scope of the Title 13, applicable to "receivers and assignees," applies to "a receiver appointed under the general equitable power of a court to take charge of an estate" and "a receiver appointed under any statutory provision"). Rule 13-102 was derived in part from former Rule BP1(b), which provided in relevant part, that:

> This Subtitle is applicable to the . . . . estate of a receiver appointed under the general authority of a court of equity, and under any of the following statutory proceedings to dissolve a corporation:
>
> (a) Code, Article 23, Section 79 (Voluntary Dissolution).
> (b) Code, Article 23, Section 80 (Involuntary Dissolution).
> (c) Code, Article 23, Section 84 (Action to Forfeit a Corporate Charter).

Rule BP1(b) (1983).

preserve the disputed property, *Tatlebaum v. Pantex Mfg. Corp.*, 204 Md. 360, 372, 104 A.2d 813, 820 (1954), whereas when a petition for voluntarily dissolution is filed under the statute, no dispute necessarily exists. *See* Maryland Code (1975, 2007 Repl. Vol.), Section 3-411 of the Corporations and Associations Article. While chancery receivers are generally appointed by a court only in "extraordinary circumstances," including fraud or imminent loss of property, a corporation may petition for voluntary dissolution and the appointment of a receiver by a resolution of its board of directors and a two-thirds vote of the shareholders, absent any allegations of wrongdoing. Maryland Code (1975, 2007 Repl. Vol.), Section 3-403 of the Corporations and Associations Article.[13]

_____

[13] Shareholders and creditors of a corporation may also petition the circuit court for an involuntary dissolution of a corporate entity based on the following grounds:

(a) *By stockholders with 25 percent voting power.* – Except as provided in subsection (d) of this section, stockholders entitled to cast at least 25 percent of all the votes entitled to be cast in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that:
(1) The directors are so divided respecting the management of the corporation's affairs that the votes required for action by the board cannot be obtained; or
(2) The stockholders are so divided that directors cannot be elected.
(b) *By any stockholder with voting power.* – Except as provided in subsection (d) of this section, any stockholder entitled to vote in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that:
(1) The stockholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms would have expired on the election and qualification of their successors; or

It is against this backdrop that we consider the appealability of an order denying a motion to vacate the appointment of a receiver on the grounds that the Circuit Court lacked subject matter jurisdiction to do so.

Trans Healthcare, Inc., a Delaware corporation with its principal place of business in Sparks, Maryland filed on January 7, 2009 an "Emergency Voluntary Petition for Appointment of Receiver" pursuant to Section 3-411 of the Corporations and Associations Article and Title 13 of the Maryland Rules in the Circuit Court for Baltimore County. The emergency petition requested the entry of an order appointing Michael Sandnes as well as his firm, Executive Sounding Board Associates, Inc., as receivers over Trans Healthcare and 43-related entities. [14] The Petition alleged that Mr. Sandnes was qualified to serve as a

---

       (2) The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.

       (c) *By any stockholder or creditor.* – Any stockholder or creditor of a corporation other than a railroad corporation may petition a court of equity to dissolve the corporation on grounds that it is unable to meet its debts as they mature in the ordinary course of its business.

       (d) *Applicability of (a)(2) and (b)(1).* – Subsections (a)(2) and (b)(1) of this section do not apply to any corporation that has a class of equity securities registered under the federal Securities Exchange Act of 1934.

Md. Code (1975, 2007 Repl. Vol., 2013 Supp.), § 3-413 of the Corporations and Associations Article.

[14] Trans Healthcare, Inc. primarily operates nursing homes in various parts of the country. In its "Emergency Voluntary Petition for Appointment of Receiver," Trans Healthcare identified the entities as: Millennium Health and Rehabilitation Center of Ellicott City, LLC; Millennium Health and Rehabilitation Center of Forestville, LLC; Pathcare, Inc.; THI of Maryland, Inc.; THI of Maryland at Bel Pre, LLC; THI of Maryland at Fort Washington, LLC; THI of Maryland at Franklin Square, LLC; THI of Maryland at Liberty Heights, LLC; THI of Maryland at Marley Neck, LLC; THI of Maryland at

receiver, because he had "extensive experience in both the health care industry and serving as crisis manager and advisor to insolvent entities."

The purpose of the receivership, Trans Healthcare alleged, would be to "wind up their affairs and dissolve their corporations and limited liability companies" and its basis for the appointment of a receiver and dissolution was Trans Healthcare's poor financial situation.[15] Accordingly, it alleged that "the appointment of Mr. Sandnes as receiver would be the most cost-effective method of preserving the value of the THI Entities' assets

---

Northwest, LLC; THI of Maryland at South River, LLC; THI of Maryland Real Estate Holding Co., LLC; THI of Maryland SNFS I, LLC; THI of Maryland SNFS II, LLC; THI of Ohio at Berea, LLC; THI of Ohio at Chardon, LLC; THI of Ohio at Columbus, LLC; THI of Ohio at Cortland, LLC; THI of Ohio at Golden Years, LLC; THI of Ohio at Greenbriar North, LLC; THI of Ohio at Greenbriar South, LLC; THI of Ohio at Hillcrest, LLC; THI of Ohio at Kent, LLC; THI of Ohio at Maple View, LLC; THI of Ohio at Northwestern, LLC; THI of Ohio at Oak Grove, LLC; THI of Ohio at Paradise Oaks, LLC; THI of Ohio at Somerset, LLC; THI of Ohio at Valley View, LLC; THI of Ohio at Willard, LLC; THI of Ohio at Wintersong Village, LLC; THI of Ohio at Woodland, LLC; THI of Ohio Alfs, Inc.; THI of Ohio Alfs I, LLC; THI of Ohio Alfs at the Commons, LLC; THI of Ohio Real Estate Holding Co., LLC; THI of Ohio SNFS, LLC; THI Properties, Inc.; THI Services Corp.; THI Services of Maryland, LLC; THI Specialty Hospitals of Ohio, Inc.; THI Therapy Concepts, LLC; and Trans Healthcare of Ohio, Inc.

[15] Trans HealthCare alleged with respect to its assets at the time of the Petition that it had $500,000 in cash and $2,700,000 in receivables. Additionally, Trans Healthcare listed as an asset the "Northwest Facility (real and personal property)," a "comprehensive care facility" that "offers special services for patients with HIV and for behavioral/geriatric-psych patients." With regard to its debts, Trans Healthcare alleged that Trans Healthcare owed approximately $300,000 to General Electric Capital Corporation, a loan provider, and additionally, that there were "general unsecured claims against the THI Entities total[ing] approximately $15,000,000." The Petition for the Appointment of a Receiver alleged, moreover, that the appointment of a receiver would be necessary to consummate a pending sale of the Northwest Health and Rehabilitation Center and to sustain operations at the facility until the sale is consummated.

15

. . . and maximizing the return to the THI Entities' creditors."   Each of the boards of directors for the THI entities had "adopted resolutions authorizing each THI Entity" to join in the petition seeking the appointment of a receiver and dissolution.

An "Order Appointing Receiver," was entered on January 9, 2009 in which certain actions involving the Trans Healthcare entities were stayed:

> 2.  Michael L. Sandnes (the "Receiver") is APPOINTED receiver of the assets, operations and business of the THI Entities, and the receivership estates of the THI Entities are consolidated for all purposes.
> 3.  Pursuant to Section 3-418 of the Corporations and Associations Article of the Annotated Code of Maryland,[16] the Receiver is vested with full title

---

[16] Section 3-418 of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol.) provides:

> (a) *As to assets and liabilities.* – The receiver of a Maryland corporation being voluntarily or involuntarily dissolved is vested with full title to all the assets of the corporation and has full power to enforce obligations or liabilities in its favor. He shall liquidate the assets of the corporation and wind up its affairs under the supervision of the court and has all powers necessary for that purpose.
>
> (b) *As to fraudulent transfer, payment, or preference.* – (1) Any preference, payment, or transfer made by the corporation which would be void, voidable, or fraudulent under State law or the federal Bankruptcy Code if made by an insolvent or bankrupt is to the same extent void, voidable, or fraudulent, respectively, as to the corporation, and the receiver has the powers of a trustee in bankruptcy with respect to setting them aside.
>
> (2) For the purpose of this subsection, the date of filing a petition for appointment of a receiver has the same effect as the date of filing a petition in bankruptcy.
>
> (c) *As to sales under mortgage.* – If assets of a corporation are sold to foreclose a mortgage, deed of trust, security interest, or similar instrument:
>
> (1) The receiver may sell only the corporation's equity of redemption in the assets, unless the other parties in interest agree otherwise in writing; and

16

to all the assets of the THI Entities and has full power to enforce obligations or liabilities in its favor. The Receiver has the power and authority to take any and all actions in lieu of, and as would otherwise be taken by, the officers and directors of the THI Entities without further court order.

* * *

5.  The following actions are hereby stayed:

(A)  The commencement or continuation of a judicial, administrative or other action or proceeding against the THI Entities that was or could have been commenced before the commencement of this proceeding or to recover a claim against any of the THI Entities that arose before the commencement of this case;

(B)  The enforcement against any of the THI Entities or against property of the receivership estate of a judgment obtained before the commencement of this case;

(C)  Any act to obtain possession of property of the receivership estate or of property from the estate or to exercise control over property of the estate;

(D)  Any act to create, perfect or enforce any lien against property of the receivership estate;

(E)  Any act to create, perfect or enforce against property of any of the THI Entities any lien to the extent that such lien secures a claim that arose before the commencement of this proceeding;

(F)  Any act to collect, assess or recover a claim against any of the THI Entities that arose before the commencement of this proceeding; and

(G)  The setoff of any debt owing to any of the THI Entities that arose before the commencement of this proceeding against any claim against any of the THI Entities.

Pursuant to Rule 13-201,[17] four days after the order was granted, the receiver mailed, via

---

(2) If the other parties do not agree otherwise in writing, the sale may take place as if the proceedings for dissolution had not been instituted.

[17] Rule 13-201 provides in relevant part:

17

first class mail, his notice of appointment to all known creditors, including Ms.

Spivery-Jones:[18]

## NOTICE TO CREDITORS BY RECEIVER

TO ALL PERSONS INTERESTED IN THE ESTATE OF TRANS HEALTHCARE, INC. AND ITS RELATED ENTITIES:

Notice is given with respect to Trans Healthcare, Inc. and its related entities identified on the attached list (collectively, the "THI Entities"), whose business address is 902 Ridgebrook Road, Sparks, Maryland 21152, that this Court has appointed Michael L. Sandnes, whose business address is Executive Sounding Board Associates, Inc., 10 North Calvert Street, Suite 647, Baltimore, Maryland 21202 . . . as receiver for the THI Entities.

All persons having claims against the THI Entities should file them, under oath, with the Clerk of the Circuit Court at the address below and serve copies on the receiver and his counsel not later than 120 days from the date this Notice was issued. A proof of claim form is attached.

No appeal was taken by Ms. Spivery-Jones from the order appointing Michael Sandnes as a receiver.

Three months after the notice was issued, Francina Spivery-Jones, Petitioner, as Executor of the Estate of her husband, James Henry Jones, filed a claim for allegedly negligent medical treatment for $5,000,000, in which she alleged that she had filed suit in

---

(a) **Notice by receiver or assignee.** Promptly but in no event later than 5 days after the court appoints a receiver or assumes jurisdiction over the estate of an assignee, the receiver or assignee shall file a form of Notice to Creditors with the clerk, who shall issue the Notice. The receiver or assignee shall cause the Notice to be published.

[18] A "certificate of notice to creditors" was filed in the Circuit Court, which attached a list of all creditors to whom notice had been sent, in which Ms. Spivery-Jones was listed. A second notice to creditors was sent out seven months after the first notice.

the Court of Common Pleas of Montgomery County, Pennsylvania, against Trans Healthcare. The suit, according to the receiver, has not been stayed.

Approximately eighteen months after his appointment, Mr. Sandnes requested that a substitute receiver be appointed because the receivership proceedings were coming to a conclusion and he intended to terminate his employment with Executive Sounding Board Associates. He requested the appointment of Alan M. Grochal, a Maryland attorney who had previously served as his counsel as receiver for Trans Healthcare. The motion was granted:

> 2. Michael L. Sandnes is authorized to resign as receiver for the THI Entities' estate.
> 3. Alan M. Grochal is appointed substitute receiver in the place and stead of Mr. Sandnes.
> 4. Mr. Sandnes is released from all of his duties and obligations as a receiver in this proceeding.
> 5. Mr. Grochal succeeds to and has all the rights, powers, trust and duties of a receiver as if originally named as receiver in this proceeding.
> 6. Mr. Sandnes is directed to turn over all appropriate papers, records and other property to Mr. Grochal promptly upon entry of this Order.
> 7. Mr. Grochal is directed to file within 30 days of the date of this Order a report containing the information described in Maryland Rule 13-501(b).
> 8. Except to the extent provided herein, this Court's Order Appointing Receiver dated January 8, 2009 shall remain in full force and effect until further order of the Court.

Ms. Spivery-Jones did not take an appeal from this order.

Nearly six months after the substitute receiver was appointed, and more than two years after the original receivership was established, Ms. Spivery-Jones filed a "motion to vacate receivership order for lack of subject matter jurisdiction and declare receivership

19

order void *ab initio* and request for hearing." In so doing, she alleged that, "THI has not dissolved since the Emergency Petition was filed, and the statutory basis for the Receivership thus does not exist." Ms. Spivery-Jones argued, moreover, that pursuant to Section 3-411 of the Corporations and Associations Article, which permits a "director, stockholder, or creditor of a Maryland corporation" to petition a court of equity for the appointment of a receiver, the circuit court had no authority to appoint a receiver over Trans Healthcare and its related entities, because Trans Healthcare was a Delaware Corporation and many of the other entities were out-of-state corporations and limited liability companies.

The receiver opposed the motion, contending, *inter alia*, that the circuit court had inherent equitable authority to appoint a receiver over the Trans Healthcare entities distinct from its authority in Section 3-411 of the Corporations and Associations Article. Pursuant to the court's inherent equitable authority, the receiver argued that the circuit court had jurisdiction to appoint a receiver over the out-of-state entities, because "all of the entities' assets and operations were located and based in Maryland." The receiver asserted, moreover, that it would be "grossly unfair, prejudicial and inequitable to the creditors of the THI Entities, the THI Entities and this Court to declare the Receivership Order void and require that all transactions and actions taken in reliance on the Receivership Order be undone," because "[f]or well over two years, the Movant sat idly by as the Receiver . . . . dissolved all 43 of THI's subsidiaries, settled hundreds of Medicare and Medicaid cost reports in Maryland and Ohio, collected nearly all of the THI Entities'

20

accounts receivable, liquidated the estate's operating assets, paid administrative claims and wound down the THI Entities' business affairs."

Judge Vicki Ballou-Watts of the Circuit Court for Baltimore County held a hearing on the motion and, ultimately, determined that the court had authority to appoint a receiver pursuant to the "general equitable power of the court to take charge of the estate," in an order providing:

> Section 3-418 of the MD CODE ANNOTATED CORPORATIONS AND ASSOCIATIONS ARTICLE, provides that "a director, stakeholder or creditor of a *Maryland Corporation* which is dissolving voluntarily may petition a court of equity to take jurisdiction of the liquidation of the corporation." Trans Healthcare, Incorporated was incorporated in Delaware.
>
> However, the introductory paragraph of the Order Appointing Receiver and successive paragraphs numbered one (1) and two (2) are silent with respect to whether the receiver was appointed pursuant to Section 3-418 – which would have been in error – or, in the alternative, pursuant to *Maryland Rule* 13-102(a)(2). Although paragraph three (3) of the Order cites Section 3-418 when identifying the receiver's powers, the court had authority to appoint a receiver under the aforementioned *Maryland Rule*. This authority is consistent with the general equitable power of the court to take charge of an estate and thus grant the same powers and authority listed in paragraph three (3) of the Order.[19] The fact that the wrong statute was cited in listing the powers and authority of the receiver under paragraph three (3) does not affect the court's authority to grant the requested relief nor does

---

[19] Paragraph three of the order appointing Michael Sandnes as receiver provided:

> Pursuant to Section 3-418 of the Corporations and Associations Article of the Annotated Code of Maryland, the Receiver is vested with full title to all the assets of the THI Entities and has full power to enforce obligations or liabilities in its favor. The Receiver has the power and authority to take any and all actions in lieu of, and as would otherwise be taken by, the officers and directors of the THI Entities without further court order.

the wrong citation render the receiver's powers invalid.

The Court of Appeals has upheld the court's authority to appoint a receiver pursuant to equitable subject matter jurisdiction. *See First Federal Commodity Trust Corp. v. Comm'r of Sec*., 272 Md. 329 (Md. 1974). In addition, the Court has upheld the appointment of a receiver, even when the court lacked statutory basis. *See id.*

Ms. Spivery-Jones, thereafter, noted an appeal from the order denying her motion to vacate the appointment of a receiver for lack of subject matter jurisdiction.[20] The receiver, however, moved to dismiss the appeal, alleging that the order denying her motion to vacate was not a final appealable judgment and was not appealable pursuant to Section 12-303 of the Courts and Judicial Proceedings Article, which authorizes the appeal of certain interlocutory orders, including an order appointing a receiver. Ms. Spivery-Jones disagreed, contending that the appeal was from an order appointing a receiver, and alternatively, was appealable under the collateral order doctrine.

The Court of Special Appeals, in an unreported opinion, dismissed the appeal, reasoning that the order denying the motion to vacate the receivership was not a final judgment under Section 12-301 of the Courts and Judicial Proceedings Article,[21] nor was

---

[20] The questions presented to the Court of Special Appeals were:

> 1. Whether the lower court had subject matter jurisdiction to establish a receivership over THI and the related entities?
> 2. Whether the lower court abused its discretion in deciding equitable grounds existed for the receivership?

[21] Section 12-301 of the Courts and Judicial Proceedings Article provides:

> Except as provided in § 12-302 of this subtitle, a party may appeal

22

it appealable under Section 12-303 of the Courts and Judicial Proceedings Article[22] or

under the collateral order doctrine. After disposing of the appeal under the final judgment

rule, because the court concluded that an order challenging the subject matter jurisdiction

of a court is not appealable, the Court of Special Appeals held that Section 12-303 did not

authorize an appeal, because Ms. Spivery-Jones was not appealing from an order

appointing a receiver, but rather, was appealing from the denial of a motion to vacate the

appointment of a receiver:

> CJP § 12-303(3)(iv) . . . authorizes an interlocutory appeal of an order
> "[a]ppointing a receiver but only if the appellant has first filed his answer in
> the cause." . . . . But Ms. Spivery-Jones is not appealing from an order
> appointing a receiver; she is appealing from the denial of the motion to
> vacate the appointment of a receiver. If Ms. Spivery-Jones had desired to

---

> from a final judgment entered in a civil or criminal case by a circuit court.
> The right of appeal exists from a final judgment entered by a court in the
> exercise of original, special, limited, statutory jurisdiction, unless in a
> particular case the right of appeal is expressly denied by law. In a criminal
> case, the defendant may appeal even though imposition or execution of
> sentence has been suspended. In a civil case, a plaintiff who has accepted a
> remittitur may cross-appeal from the final judgment.

[22] In relevant part, Section 12-303 of the Courts and Judicial Proceedings Article
provides:

> A party may appeal from any of the following interlocutory orders
> entered by a circuit court in a civil case:
>
> * * *
>
>  (3) An order:
>
> * * *
>
>   (iv) Appointing a receiver but only if the appellant has first filed his
>   answer in the cause;

23

pursue an appeal under the exception provided in CJP § 12-303(3)(iv), she would have had to appeal from the January 9, 2009, order appointing the receiver or the July 28, 2010, order appointing a substitute receiver. She did not note an appeal within 30 days of either of these two orders appointing a receiver.

The Court of Special Appeals then determined that there is no right of appeal from an order refusing to rescind the appointment of a receiver, citing our decision in *Hull v. Caughy*, 66 Md. 104 (1886). The intermediate appellate court also determined that the order denying the motion to vacate was not an appealable collateral order, reasoning that the order was not effectively unreviewable on appeal because an appellate court is capable of reviewing subject-matter jurisdiction at the time the receivership is terminated.

Ms. Spivery-Jones filed a petition for certiorari, which we granted, to consider the following questions, which we have reordered:

1. Did the Court of Special Appeals wrongly deny Ms. Jones' appeal rights granted pursuant to CJP § 12-303(3)(iv) from a Circuit Court order which converted the receivership from a statutory to an equitable receivership?

2. Should the Court of Special Appeals have applied the collateral order doctrine to Ms. Jones' appeal of the Circuit Court order when all of the receivership estate's assets will be distributed and/or dissipated by the time a final judgment is entered and resolution of Ms. Jones' substantive arguments will conclusively determine the propriety of the receivership?

*Spivery-Jones v. Receivership Estate of Trans Healthcare, Inc.*, 432 Md. 466, 69 A.3d 474 (2013).

"[A]ppeals must be taken from final judgments, except under certain limited exceptions." *Addison v. Lockhearn*, 411 Md. 251, 261, 983 A.2d 138, 144 (2009);

24

Maryland Code (1974, 2013 Repl. Vol.), Section 12-301 of the Courts and Judicial Proceedings Article. A final judgment is an order that "has the effect of putting a party out of court . . . ." *Amer. Bank Holdings, Inc. v. Kavanagh*, 436 Md. 457, 463, 82 A.3d 867, 871 (2013).[23] One limited exception to the final judgment rule includes interlocutory orders[24] that the Legislature has "by legislative fiat . . . deemed immediately appealable." *Id.* at 465, 82 A.3d at 872. Section 12-303 enumerates a number of immediately appealable orders,[25] including orders "[a]ppointing a receiver but only if the appellant has

---

[23] Ms. Spivery-Jones does not assert before us that the order denying her motion to vacate the receivership was a final judgment.

[24] An interlocutory order is an order "that relate[s] to some intermediate matter in the case . . . ." *Amer. Bank Holdings*, 436 Md. at 467 n.10, 82 A.3d at 873 n.10, quoting Black's Law Dictionary 1207 (9th ed. 2009).

[25] These orders include:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;
(2) An order granting or denying a motion to quash a writ of attachment; and
(3) An order:
(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;
(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;
(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions

25

first filed his answer in the cause."  Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article.

In addition, "at common law, an order could be appealed as a collateral order under the 'collateral order doctrine.'"  *Amer. Bank Holdings*, 436 Md. at 466, 82 A.3d at 872. The collateral order doctrine is a "very narrow exception" to the final judgment rule, which "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court."  *Dawkins v. Baltimore Police,* 376 Md. 53, 58, 827 A.2d 115, 118 (2003) (internal citations and quotations omitted).   Under this doctrine, a party may appeal from an order if the order being appealed satisfies four criteria: "(1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment."  *Addison*, 411 Md. at 284-85, 983 A.2d at 158.

---

in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction;

 (iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

 (v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

 (vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination . . . .

Md. Code, (1974, 2013 Repl. Vol.), § 12-303 of the Courts and Judicial Proceedings Article.

Determining whether the order denying Ms. Spivery-Jones's motion to vacate the receivership is an interlocutory order and appealable under Section 12-303(3)(iv) is our first endeavor, which, necessarily, requires us to ascertain whether it is an order "appointing a receiver."[26]  There was an order appointing a receiver when Mr. Sandnes

---

[26]  Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article had its genesis in Section 2 of Chapter 346 of the 1835 Maryland Laws:

> That when any injunction which has heretofore issued, or shall hereafter issue from the Court of Chancery, or any county court as a Court of Equity, or **where any receiver or receivers have been, or shall be ordered or appointed by the Court of Chancery, or county court as a Court of Equity, it shall be lawful for the defendants in the case, or any of them, to appeal** from the granting of such injunction, or from the refusal to dissolve the same, or **from the order, ordering or appointing such receiver, the answer of the defendant or defendants being first filed to the Court of Appeals**, of the Shore where such injunction shall have been issued, or receiver appointed, and it shall be the duty of the said Court of Appeals, at the first term of the said appeal, to hear and determine the same, and to pass such order in the premises, as to it may seem right.

(emphasis added).  The language requiring an answer being "first filed to the Court of Appeals, of the Shore where such injunction shall have been issued" refers to the fact that the 1805 Constitution required the Court of Appeals to sit on both the eastern and western shores. Invernizzi, *supra*, at 3.  Since 1835, the law has gone through multiple iterations without substantive change.  In 1860, the law was amended to read: "An appeal may also be allowed in the following cases, to wit:  From . . . an order appointing a receiver, the answer of the party appealing being first filed in the cause . . . ."  Md. Code (1860), Art. 5, § 21.  In 1920, the Legislature amended the prefatory language to read that "[a]n appeal may also be **granted** in the following cases," but did not otherwise alter the language permitting an appeal from an appointment of a receiver.  Acts 1920, Ch. 274, § 27 (emphasis added). The language remained unchanged until 1957, in which it read:

> Any party may appeal to the Court of Appeals from any of the following interlocutory orders entered by or actions of a court of equity:

\* \* \*

27

was appointed a receiver.   The order appointing Mr. Grochal as a substitute receiver may also have been appealable by Ms. Spivery-Jones as an appointment of a receiver, although case law from other jurisdictions suggests otherwise.   *See, e.g.*, *Parker v. Farish*, 1 So. 2d 596, 599 (1941).   In any event, Ms. Spivery-Jones did not note an appeal from either of those orders.   Rather, she suggests that the denial of her motion to vacate the receivership equals an appointment of a receiver because the receivership, she alleges, was converted from a statutory receivership to a chancery receivership.   We disagree.

The order denying the motion to vacate the receivership, rather, was not appealable, pursuant to Section 12-303(3)(iv) under a plain meaning analysis of the

---

(d) An order appointing a receiver.

\* \* \*

An appeal under this section from an order granting an injunction or from a refusal to dissolve the same or from an order appointing a receiver shall not be entered until the answer of the party appealing has first been filed in the cause.

Md. Code (1957), Art. 5, § 7.   The language was subsequently amended in 1973 as part of the revision process of the Maryland Code, in which subsection (d) was consolidated with the final paragraph, to its current iteration, in which it reads:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \*

(C) An order:

\* \* \*

(4) Appointing a receiver but only if the appellant has first filed his answer in the cause.

Acts 1973, 1st Sp. Sess., Ch. 2. § 1.

28

statutory language. Section 12-303(3)(iv) authorizes an appeal from an order "[a]ppointing a receiver but only if the appellant has first filed his answer in the cause."[27]

The word "appoint" involves the act of designating a person or entity to act in a particular capacity. Webster's Dictionary, for example, defines "appoint" as to "name to fill an office or position." Webster's II New College Dictionary 55 (1999). The Random House Dictionary of the English Language, likewise, defines "appoint" as "to name or assign to a position, an office, or the like; designate." The Random House Dictionary of the English Language 102 (2d ed. 1987). We also have had occasion to define what the word "appoint" means in the context of determining whether a trustee was appointed by the court in *Corbett v. Hospelhorn*, 172 Md. 257, 191 A. 691 (1937), in which we opined that the "accepted" and ordinary meaning of "appoint" is "to designate some person to occupy an office or perform some function." *Corbett*, 172 Md. at 257, 191 A. at 696.

Applying the accepted meaning of appoint in the present case compels the conclusion that the order in which Mr. Sandnes was appointed a receiver, from which Ms. Spivery-Jones did not take an appeal, was the order from which an appeal was authorized. Even assuming *arguendo* that the order denying the motion to vacate the receivership altered the receivership from a statutory to a chancery receivership,[28] it did not equate to

---

[27] Ms. Spivery-Jones asserts that her motion to vacate the receivership constitutes an "answer" within the meaning of the statute. Because we conclude that the denial of the motion to vacate did not "appoint" a receiver, we need not resolve this issue.

[28] Judge Ballou-Watts's order denying Ms. Spivery-Jones's "Motion to Vacate Receivership Order" suggests that the order did not *change* the underlying legal basis of

29

an order appointing a receiver under Section 12-303(3)(iv); it did not designate any person or entity to take control of the Trans Healthcare entities. In so concluding, we find succor in our long-standing jurisprudence in which we have opined that orders denying motions to rescind previous appointments of a receiver are not appealable interlocutory orders.[29] *See*

the receivership, but rather, determined that the initial order appointing Mr. Sandnes had been rendered pursuant to the court's equitable authority, consistent with that which was requested by Trans Healthcare:

> [T]he introductory paragraph of the Order Appointing Receiver and successive paragraphs number one (1) and two (2) are silent with respect to whether the receiver was appointed pursuant to Section 3-418 – which would have been in error – or, in the alternative, pursuant to *Maryland Rule* 13-102(a)(2). Although paragraph three (3) of the Order cites Section 3-418 when identifying the receiver's powers, the court had authority to appoint a receiver under the aforementioned *Maryland Rule*. **This authority is consistent with the general equitable power of the court to take charge of an estate and thus grant the same powers and authority listed in paragraph three (3) of the Order.** The fact that the wrong statute was cited in listing the powers and authority of the receiver under paragraph three (3) does not affect the court's authority to grant the requested relief nor does the wrong citation render the receiver's powers invalid.
>
> * * *
>
> The Circuit Court had authority to grant THI Entities' Emergency Voluntary Petition for Appointment of Receiver pursuant to *Maryland Rule*13-102(a)(2) **which was cited in the Emergency Voluntary Petition filed on January 7, 2009.**

(emphasis added).

[29] The only authority Ms. Spivery-Jones cites in support of her contention that the order denying her motion to vacate was immediately appealable pursuant to Section 12-303(3)(iv) is *Norwest Bank Wisconsin, N.A. v. Malachi Corp.*, 245 F. App'x 488 (6th Cir. 2007), a case interpreting federal statutory appellate authority. *Norwest*, however, is an unreported opinion, which has no precedential authority. *See Clancy v. King*, 405 Md. 541, 558 n.17, 954 A.2d 1092, 1102 n.17 (2008) ("[T]he citation of unreported opinions (Maryland or otherwise) ordinarily is not appropriate.").

*Monumental Ins. Co. v. Wilkinson*, 100 Md. 31, 32, 59 A. 125, 126 (1904) ("The appeal in this case was taken from two orders of Circuit Court No. 2, of Baltimore City, the first of which appointed receivers of the assets of the defendant corporation and the second refused to rescind their appointment. No appeal lies from the order refusing to rescind the appointment."); *Hull v. Caughy*, 66 Md. 104, 105, 6 A. 591, 591 (1886) ("[W]hile an appeal is given from an order appointing a receiver, no appeal is given from an order refusing to rescind the appointment, or to discharge the receiver. Section 12-303(3)(iv), then, does not permit an appeal in this case.[30]

Whether the order denying the motion to vacate the receivership was an appealable collateral order at common law is our next inquiry. For an order to be appealable pursuant to the collateral order doctrine, it must satisfy four criteria: "(1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment." *Addison v. Lochearn*, 411 Md. 251, 285,

---

[30] We find no merit to Ms. Spivery-Jones's contention that an appeal from the order denying the motion to vacate the receivership should be permitted under Section 12-303(3)(iv) because, "Ms. Jones would have had no motivation to file an appeal of the original receivership order because Maryland law clearly allows for the creation of a receivership upon the dissolution of a corporation . . . [O]nly hindsight has demonstrated that the Petitioner had no intention of dissolving and that the statutory authority was inapplicable to most of the Petitioners were inapplicable to most of Petitioners since they were formed in other states". Ms. Spivery-Jones waged a number of attacks on the receivership, including that the circuit court had no authority to appoint a receiver over the out-of-state entities. Four days after the receiver was appointed, Ms. Spivery-Jones received notice of the establishment of the receivership, thereby providing her with the necessary information to challenge the propriety of the appointment of the receiver.

983 A.2d 138, 158 (2009) (citations omitted). The applicability of the doctrine, however, is limited. In *Washington Suburban Sanitary Commission v. Bowen*, 410 Md. 287, 296-97, 978 A.2d 678, 684 (2009), we iterated:

> Time after time, this Court's opinions have emphasized that the collateral order doctrine is extremely narrow and that it is applicable only under extraordinary circumstances. *See, e.g., Hudson v. Housing Authority, supra,* 402 Md. at 25, 935 A.2d at 399 (The doctrine encompasses "a 'narrow' class of interlocutory orders in 'extraordinary circumstances'"); *St. Joseph's v. Cardiac Surgery, supra,* 392 Md. at 85, 896 A.2d at 310 (The doctrine applies "under extremely limited circumstances"); *Nnoli v. Nnoli, supra,* 389 Md. at 329, 884 A.2d at 1223 ("The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. * * * [It is inapplicable if the] case does not present an extraordinary situation"); *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 591, *cert. denied,* 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003) ("[T]he doctrine may be entertained only in extraordinary circumstances").

(alterations in original); *see also Schuele v. Case Handyman*, 412 Md. 555, 573, 989 A.2d 210, 220 (2010) (noting the Court's "jealous application" of the collateral order doctrine). Each of the four elements, moreover, must be satisfied to constitute a collateral order. *Stephens v. State*, 420 Md. 495, 503, 24 A.3d 105, 109 (2011).

In order to get to the gravamen of the dispute between the parties, we will assume, without deciding, that the first three prongs of the collateral order doctrine are met, and will only address the fourth, that being whether the order is "effectively unreviewable on appeal from a final judgment." *Bowen*, 410 Md. at 296, 978 A.2d at 684 (internal quotations omitted). Generally, "the fourth prong . . . 'is not satisfied except in extraordinary situations,'" *Nnoli v. Nnoli,* 389 Md. 315, 329, 884 A.2d 1215, 1223 (2005) (quotations

32

omitted), because "'[o]therwise, . . . there would be a proliferation of appeals under the collateral order doctrine.'" *Stephens v. State*, 420 Md. 495, 505, 24 A.3d 105, 110 (2011) (alterations in original), quoting *Foley,* 373 Md. at 636, 820 A.2d at 593. Orders that have traditionally been deemed effectively unreviewable on appeal are those that have "become moot if appeal is delayed until the entry of a normal final judgment." *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 94, 394 A.2d 801, 806 (1978).

Ms. Spivery-Jones attempts to bring herself within the extraordinary in the present case, by asserting that the assets of the receivership will be looted through distributions to other creditors as well as the expenditure of administrative and legal fees before any meaningful review of her contention that the Circuit Court had no jurisdiction to appoint a receiver over the Trans Healthcare entities. The reality of a receivership in Maryland, whether chancery or statutory, however, is that under our Rules, she will have an opportunity to challenge the appropriateness of any complete or partial distribution plan and have that decision reviewed on appeal, should one be appropriately noted.

Under Rules 13-501 through 13-503, the receiver is required to file an accounting with the court detailing any proposed complete or partial distribution plan, which the court must refer to an auditor before approving any distribution. All creditors who have filed a claim in the receivership proceedings receive notice of the audit and may file exceptions to the accounting, Rule 13-502(c); Rule 2-543(g), which would be reviewable on appeal. *See, e.g.*, *Cohill v. Chesapeake & Ohio Canal Co.*, 177 Md. 412, 424, 10 A.2d 316, 322 (1939); *Philadelphia & Reading Coal & Iron Co. v. Willinger*, 137 Md. 46, 47, 111 A. 132,

33

133 (1920); *Italian Fruit & Importing Co. v. Penniman*, 100 Md. 698, 61 A. 694 (1905).[31]

The fact that legal and administrative fees will have been expended, moreover, does not present a compelling reason to justify application of the collateral order doctrine, because these are costs that are associated with any legal proceeding. *Cf. Peat*, 284 Md. at 95, 394 A.2d at 806 (rejecting Petitioner's, Peat & Co.'s, argument that review of an order denying its motion to disqualify counsel is unreviewable upon appeal because the Petitioner must bear the costs of trial, concluding that, "such a burden does not present a better case for the effective unreviewability of an order denying disqualification than could be made for all interlocutory orders."). To permit an appeal based on the collateral order doctrine solely because administrative and legal fees will be expended in the litigation would eviscerate existing limitations on appellate jurisdiction.

---

[31] Indeed, many of the cases upon which Ms. Spivery-Jones rely are cases in which the United States Court of Appeals for the Fifth, Sixth, and Seventh Circuits, as well as the Pennsylvania intermediate appellate court, permitted appeals from orders *ratifying distribution plans or refusing a distribution.* *S.E.C. v. Wealth Management LLC*, 628 F.3d 323, 330 (7th Cir. 2010); *S.E.C. v. Forex Asset Management LLC*, 242 F.3d 325 (5th Cir. 2001); *S.E.C. v. Basic Energy & Affiliated Resources, Inc.*, 273 F.3d 657 (6th Cir. 2001); *In re Harmar Coal Co.*, 548 A.2d 1224 (Pa. 1988). Ms. Spivery-Jones also relies on *McDow v. Dudley*, 662 F.3d 284 (4th Cir. 2011), to support her contention that the order denying the motion to vacate is an appealable collateral order. *McDow*, however, is a bankruptcy case in which the Fourth Circuit did not apply the collateral order doctrine, but rather determined that an order denying a United States Trustee's motion to dismiss a bankruptcy case was appealable under Section 707 of Title 11 of the United States Code, which authorizes appeals from "final orders" of the bankruptcy court to the United States District Court.

Because Ms. Spivery Jones has no right of appeal pursuant to Section 12-303(3)(iv) of the Courts and Judicial Proceedings Article or under the collateral order doctrine, we affirm the judgment of the Court of Special Appeals dismissing the appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER**