*Bartenfelder v. Bartenfelder*, No. 934, , September Term, 2018, No. 2052, September Term 2019.  Argued: September 12, 2019.  Opinion by Gould, J.


**CORPORATIONS – CLOSE CORPORATIONS –  STATUTORY RIGHT TO ELECT TO PURCHASE SHAREHOLDER STOCK IN A DISSOLUTION**
Section 4-603(a) of the Corporations and Associations Article of the Maryland Code Annotated (1975, 2014 Repl. Vol.) may be exercised to avoid the dissolution of a close corporation, or the appointment of a receiver in a dissolution proceeding, but not to avoid the appointment of an equitable receiver outside of the dissolution context.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

**CONSOLIDATED**

No. 0934, September Term, 2018

and

No. 2052, September Term 2019

———————————————————————

KIMBERLY BARTENFELDER

v.

THOMAS BARTENFELDER

———————————————————————

Wright,
Gould,
Harrell, Glenn T., Jr.
   (Senior Judge, Specially Assigned)
JJ.

———————————————————————

Opinion by Gould, J.

**ON MOTION FOR RECONSIDERATION**
———————————————————————
Filed:  October 28, 2020

\* Kehoe, Christopher J.   did not participate in the Court's decision to report this opinion pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This is a dispute between two stockholders of two close corporations. One sought the appointment of a receiver to take charge of the companies to prevent the continued alleged wrongdoing of the other. The alleged wrongdoer sought to leverage the demand for the appointment of a receiver into a statutory right to buy out the complaining stockholder. The issue we must decide is whether a complaint seeking the appointment of a receiver but not the dissolution of the company, triggers the statutory right of another stockholder, under Section 4-603(a) of the Corporations and Associations Article of the Maryland Code Annotated ("CA") (1975, 2014 Repl. Vol.), to purchase the complainant's stock in the subject company. We hold that, in the absence of a petition for dissolution, the request for a receiver does not trigger the statutory purchase right. For the reasons that follow, therefore, we shall reverse the ruling of the Circuit Court for Harford County.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Kimberly Bartenfelder and Thomas Bartenfelder are the sole stockholders of two Maryland close corporations, Bartenfelder Sanitation Service, Inc. ("Bartenfelder Sanitation"), and Bartenfelder Landscape Service, Inc. ("Bartenfelder Landscape," and together with Bartenfelder Sanitation, the "Corporations"), and the sole members of a Maryland limited liability company, 3340 Forge Hill LLC (the "LLC").[2]

---

[1] Subsequent to the initial issuance of this opinion, Mr. Bartenfelder moved for reconsideration. Although we denied his motion, we have withdrawn and reissued this opinion with a change to what used to be footnote 3 and is now footnote 4, and by adding new footnotes numbered 6, 8, 21, and 22 to address the issues raised in his motion.

[2] The Corporations and the LLC are together referred to herein as the "three companies."

In February 2017, Ms. Bartenfelder filed a complaint in the Circuit Court for Harford County against Mr. Bartenfelder and the three companies. Ms. Bartenfelder accused Mr. Bartenfelder of assorted wrongdoings in connection with the three companies, including the alleged misuse or misappropriation of company funds and corporate waste.

The complaint included two counts. In Count I, styled "Injunctive Relief/Receivership," Ms. Bartenfelder alleged that she would suffer immediate and irreparable injury, loss, or damage if Mr. Bartenfelder was:

- "permitted to continue to prevent Plaintiff from acting in her role as President and majority shareholder of Sanitation, and as an officer, and/or managing member and/or 50% shareholder of the other Business";

- "permitted to continue to dissipate and convert corporate assets to his own personal use, as the loss of funds and revenue to the Business will result in a loss of future business opportunities and revenue that cannot be accurately determined"; and

- "permitted to continue to transfer the clients, jobs, and operations of the [three companies] to third parties in which Plaintiff has no interest, as this will cause the [three companies] to incur a loss of revenue as a result in an amount that cannot be definitely determined."

Count I requested injunctive relief to stop Mr. Bartenfelder from interfering with Ms. Bartenfelder's alleged lawful acts with regard to the three companies and to stop Mr. Bartenfelder's alleged misuse of corporate funds and assets, and the appointment of "a receiver to have full and sole power over the accounts and operations of" the three companies and to prevent Mr. Bartenfelder from firing or threatening to fire any employee. Count I also requested that the receiver be authorized "to retain a forensic accountant to trace all transfers from the [three companies] and use of funds," and further requested an award of damages, expenses, attorneys' fees, and costs. Count II sought declaratory relief

2

and asked the court to find that certain acts that Ms. Bartenfelder undertook regarding Bartenfelder Sanitation were "effective, binding and lawful."

Upon receipt of the complaint, Mr. Bartenfelder's counsel delivered a letter to Ms. Bartenfelder's counsel claiming that Ms. Bartenfelder's lawsuit triggered his right under CA § 4-603(a) to acquire her shares in the Corporations, and that Mr. Bartenfelder elected to exercise that right.

Mr. Bartenfelder filed an answer to a part of Count I of the complaint—specifically, Ms. Bartenfelder's request for the appointment of a receiver. In his answer, Mr. Bartenfelder asked the court to enforce his election to purchase Ms. Bartenfelder's stock in the Corporations. The prayer for relief in Mr. Bartenfelder's answer stated:

> WHEREFORE, Mr. Bartenfelder seeks to have this Honorable Court stay the Dissolution Count as he has exercised his statutory right to purchase whatever interest in the Companies that Ms. Bartenfelder holds pursuant to *Corp. & Assoc. Art.* 4-603. Since the parties will not be able to reach an agreement on the fair value of Ms. Bartenfelder's interest, Mr. Bartenfelder has also moved the Court to establish a bond in accordance with the statute and determine a fair value of Ms. Bartenfelder's interests. Mr. Bartenfelder respectfully also requests such other and further relief as the Court deems appropriate.

Mr. Bartenfelder also moved to dismiss the complaint and to stay further proceedings. In support of his motion to stay, Mr. Bartenfelder argued that because he had exercised his right to purchase Ms. Bartenfelder's stock in the Corporations and because they could not agree on the fair value of her stock, the court was required under CA § 4-603(b) to stay further proceedings while the parties and the court implemented the valuation process outlined in the statute.

3

Additional motions practice ensued, primarily by Mr. Bartenfelder, including a motion for summary judgment and a motion for injunctive relief to bar Ms. Bartenfelder's involvement in the Corporations and to enforce Mr. Bartenfelder's election to purchase her stock.

In January 2018, Ms. Bartenfelder filed a verified amended complaint with four counts. In Count I, Ms. Bartenfelder again requested equitable relief related to the three companies but dropped the request for the appointment of a receiver. In Count II, she again asserted a claim for declaratory judgment as to Ms. Bartenfelder's actions in connection with Bartenfelder Sanitation. In Count III, she asserted a breach of contract claim for damages and a temporary restraining order with respect to, among other things, a shareholders' agreement for one of the companies. In Count IV, she alleged that Mr. Bartenfelder breached a contractual covenant not to compete with one of the companies and sought injunctive relief and damages. Mr. Bartenfelder moved to strike the amended complaint.[3]

The court convened a hearing on April 30, 2018, to resolve the open motions. The court began with Mr. Bartenfelder's motion for a stay of the proceedings pending the

---

[3] As indicated above, Ms. Bartenfelder filed an amended complaint that did not include a request for a receiver. It doesn't appear to us that the court ruled on Mr. Bartenfelder's motion to strike the amended complaint, in which case the operative complaint would be the amended complaint. Because Mr. Bartenfelder exercised his purported right before the amended complaint was filed, it appears that the court concluded, at least implicitly, that Mr. Bartenfelder's election was not nullified by Ms. Bartenfelder's attempt to withdraw the request for a receiver. That issue—whether Ms. Bartenfelder's filing of her amended complaint nullified Mr. Bartenfelder's prior election—is not before us.

valuation of Ms. Bartenfelder's stock. Mr. Bartenfelder's counsel argued that Ms. Bartenfelder's requested relief, if granted, would require the court to "take control of the business from the companies and then never get it back or dissolve." Accordingly, he contended that Ms. Bartenfelder's complaint triggered his statutory right to purchase her stock in the Corporations, and that the court's intervention was necessary to determine the price for the stock.

Ms. Bartenfelder's counsel countered that Ms. Bartenfelder requested an equitable receiver, not a statutory receiver appointed in a dissolution proceeding. Ms. Bartenfelder's counsel further argued that, because the complaint did not seek to dissolve the Corporations, the statutory election right was not triggered.

The court agreed with Mr. Bartenfelder and ruled as follows:

> In this matter one thing that has become abundantly clear to the Court is that the parties cannot co-manage the business as co-owners. In this case the Court has to make a determination about whether what Ms. Bartenfelder was asking for was, in fact, an equitable receivership or as Mr. Bartenfelder has asked or has characterized as whether it is an opportunity for his election under the Corporations and Associations statute to elect to purchase her shares.

> \*　　　\*　　　\*　　　\*

> In large part, I don't think that a receivership under this Court's direction as Ms. Bartenfelder has asked the Court to do is going to work. I say that it is not going to work, one, because of the parties['] inability to co-manage the business, to operate the business as co-owners; but, two, also because I also find that pursuant to that statute, even though [Ms. Bartenfelder] didn't want to call it a receivership as arising from the statute, that really is the only option that works given the facts of the case.

> So, at this point I am going to find that—and the parties agree on the fact that this is a close corporation.

5

I don't think that that is an issue. At this point I do think that the statute is triggered for the Court to then appoint the appraisers to determine what the fair value is of the stock in this case. That Mr. Bartenfelder, then based on what the Court determines after it receives the report of those appraisers, make a determination as to what should then happen at that point.

I would at this point then direct that the bond be in the amount of $60,000.00. I would ask that both counsel provide me with names of individuals that you know that are qualified in this area. The Court also will make its own inquiries as to appropriate appraisers and then make a determination as to which three to appoint.

The court did not enter a written order, but the docket entry regarding the court's ruling (the "First Order") stated:

Arguments heard from counsel as to Defendant's Motion to Stay and Plaintiff's Motion for Equitable Receivership.[4] Court rules that an appraiser is to be appointed to determine fair value of business. Both parties to advise court of three appraisers each and the court will also suggest three appraisers [it deems] appropriate. Bond is set [at] $60,000.00. After the appraisals are complete, Court will make a determination as how to proceed.[5]

---

[4] We assume that the docket entry referred to Ms. Bartenfelder's request for a receiver as stated in her complaint or in her motion for a temporary restraining order that she filed with her complaint.

[5] The inclusion of this last sentence appears to refer to Mr. Bartenfelder's counsel's explanation at the hearing of his understanding of the appraisal and valuation process:

Once the report comes back from the appraisers, the parties then have an opportunity to come to the Court very similar to an arbitration proceeding where you get an award and then you can see[k] to confirm it, you can seek to modify it or you can seek to have it rejected all together.

In that respect, Your Honor is not bound by the report should Your Honor decide there is a different value. That's spelled out also in [CA § 3-210]. The appraisers, once the report is submitted to you, Your Honor, you then can determine the fair value. You then determine the purchase timing and terms on which the purchase is to be made, again to protect both parties so that it is fair the way that the money is to be paid out. Then finally the Court determines the cost. The statute again controls what happens here.

Ms. Bartenfelder filed a motion for reconsideration, which the court denied. Ms. Bartenfelder filed a notice of appeal on July 17, 2018, which was docketed by this Court as Number 934, September Term, 2018 (the "First Appeal").

While the First Appeal has been pending, the case proceeded in the circuit court with the appraisal process to determine the fair value of Ms. Bartenfelder's stock in the Corporations. Although the docket entry did not mention the stay of the proceedings as requested by Mr. Bartenfelder pursuant to CA § 4-603(b), the record reflects that the proceedings, other than the valuation process, were in fact stayed as no further actions were taken by either the parties or the court regarding Ms. Bartenfelder's claims.

In June 2019, the appraisers filed their valuation reports, which determined the fair value of Ms. Bartenfelder's interest in Bartenfelder Landscape to be $560,000.00, and the fair value of Ms. Bartenfelder's interest in Bartenfelder Sanitation to be $0.00. Neither party filed exceptions to the valuations.

Mr. Bartenfelder then filed a motion to confirm the appraisers' reports and to establish the purchase price and a payment schedule. Ms. Bartenfelder did not oppose the motion. On November 6, 2019, the circuit court granted Mr. Bartenfelder's motion and ordered him to pay to Ms. Bartenfelder two installments of $280,000, plus post-judgment interest, for her stock in the Corporations (the "Second Order").

Mr. Bartenfelder moved for leave to deposit the installment payments with the court, which Ms. Bartenfelder did not oppose. The court granted the motion. The order provided that the funds would be disbursed only upon a court order.

On December 5, 2019, Ms. Bartenfelder noted an appeal from the Second Order, which we docketed as Number 2052, September Term, 2019 (the "Second Appeal").

After depositing the purchase funds into the court registry, Mr. Bartenfelder moved to declare what he referred to as the November 6, 2019 judgment as satisfied in full. Unopposed by Ms. Bartenfelder, the circuit court granted the motion on February 24, 2020, stating that it is:

> ORDERED AND DECLARED that the purchase price set by this Court on November 6, 2019 has been paid in full by Defendant; and it is further
>
> ORDERED AND DECLARED that the judgment entered by this Court on November 6, 2019 was SATISFIED by Defendant as of February 4, 2020.

On April 20, 2020, this Court ordered the parties to show cause (the "Show Cause Order") as to (1) whether the two appeals should be consolidated; (2) whether the circuit court had discretion under Rule 2-602(b) to enter a final judgment as to either the First Order and/or Second Order; and (3) if the answer to the second question was in the affirmative, whether this Court should exercise its discretion under Md. Rule 8-602(g)(1)(C) to enter a final judgment on its own initiative. Both parties timely responded to the Show Cause Order.

On May 20, 2020, we consolidated the two appeals.[6]

---

[6] In his motion for reconsideration, Mr. Bartenfelder complains that we did not permit briefing on the Second Appeal. He does not explain why additional briefing was required or necessary given that the substantive issues in the two appeals were identical and were fully briefed and argued in the First Appeal. In fact, he does not identify a single new argument that would have been different from those made in his original brief. Nor

*MOTION TO DISMISS SECOND APPEAL*

In response to our Show Cause Order, Mr. Bartenfelder contends that the Second

Appeal is moot. He argues that after Ms. Bartenfelder noted her First Appeal, (i) the court

appointed appraisers to determine the fair value of her stock; (ii) the appraisers filed their

reports; (iii) Ms. Bartenfelder did not object to the appraisals; and (iv) he moved to confirm

the appraisers' reports and establish the purchase price based on the appraisals and to

establish the terms of payment. He also states that Ms. Bartenfelder did not oppose his

motion and that the court subsequently entered the Second Order, stating:

> The fair value of the companies for her interests in two equal installments:
> the first installment of $280,000 to be paid thirty days after the entry of this
> Order confirming the Valuation Reports; and the second installment of
> $280,000 plus post-judgment interest at the statutory rate to be paid ninety
> days after the entry of this Order confirming the Valuation Reports.

Mr. Bartenfelder contends that the Second Order constitutes a judgment. He argues

that, because Ms. Bartenfelder failed to object to the appraisals or to his motion to confirm,

Ms. Bartenfelder acquiesced to the Second Order and waived her right to appeal it. Further,

he points out that, although Ms. Bartenfelder noted an appeal from the Second Order, she

did not move for a stay pending appeal in either the circuit court or this Court, did not file

---

does he cite any authority for his implicit assertion that this Court does not have the
authority to dispense with briefing on an issue that the parties had previously fully briefed
and argued. We note that Rule 8-502, which imposes both the obligation and time periods
in which parties are required to file their briefs, begins with this limitation: "Unless
otherwise ordered by the appellate court." Contrary to Mr. Bartenfelder's assertion, this
Court had the discretion in these consolidated and substantively identical appeals to
proceed without further briefing.

a supersedeas bond, and did not move to enjoin enforcement of the court's judgment pending appeal. In addition, he argues that he satisfied the judgment by paying the purchase price into the court registry, thus "rendering the controversy moot." In that regard, he contends that even if this court were to reverse the circuit court's decision, Ms. Bartenfelder would not be able to repurchase her stock and return the money he paid for her stock because she had filed for bankruptcy and the purchase proceeds are subject to claims by creditors.

Mr. Bartenfelder stated in his response to the Show Cause Order that he intends to file a motion to dismiss the Second Appeal with his brief, but invited us to address the issue preemptively, which we accept.

We conclude that we have no basis to dismiss the Second Appeal. As Mr. Bartenfelder points out in his response to the Show Cause Order, Ms. Bartenfelder filed for bankruptcy on June 14, 2019, resulting in an automatic stay of all litigation. Mr. Bartenfelder moved in the bankruptcy court to lift the stay of, among other matters, this litigation, which the bankruptcy court granted on September 9, 2019, in an order stating:

> the automatic stay is lifted to allow all non-bankruptcy litigation currently pending in the Circuit Court of Maryland for Harford County, as well as any pending appeals or appeals that may arise from such pending litigation, to proceed to judgment, *provided*, *however*, **that enforcement of any judgment(s) against [Plaintiff] remain stayed pending further Order of the Bankruptcy Court** . . .

(italics in original, bold added).

We have reviewed the record in this case and confirmed that the monies deposited by Mr. Bartenfelder remain in the court registry, and that Ms. Bartenfelder has not

10

requested access to, or the benefit of, those funds. We have also reviewed the record in Ms. Bartenfelder's bankruptcy case and confirmed that the stay of enforcement of any judgments against her has not been lifted. From our review of the record in both forums, it does not appear that Ms. Bartenfelder has requested access to, or the benefit of, those funds. Thus, although Mr. Bartenfelder may have paid the money into the court registry, he does not contend that Ms. Bartenfelder made any effort to accept the funds, and we have found no indication that she has done so. The funds are still in the court registry, the stay of enforcement is still in place, and given that we are reversing, the funds will be returned to Mr. Bartenfelder.[7] Hence, the Second Appeal is not moot and, therefore, Mr. Bartenfelder's motion to dismiss the appeal on that basis is denied.

We are likewise not persuaded that to preserve this issue on appeal, Ms. Bartenfelder was required to file exceptions to the appraisals or oppose Mr. Bartenfelder's various post-appraisal motions. Rule 8-131 provides that we will not ordinarily decide a non-jurisdictional issue "unless it plainly appears by the record to have been raised in or decided by the trial court. . . ." Here, the issue of whether the purchase right under CA § 4-603(a) was triggered by Ms. Bartenfelder's complaint was both raised and decided in the circuit court. Nothing more was required to preserve the only substantive issue that has been raised in these appeals.

---

[7] We also disagree with Mr. Bartenfelder that a reversal by this Court would require Ms. Bartenfelder to repurchase her stock back from him. Our reversal means that the purported sale was never valid.

We therefore deny Mr. Bartenfelder's motion to dismiss the Second Appeal.[8]

*JURISDICTION*

This Court does not acquire jurisdiction over an appeal unless it is taken from a final judgment or from an interlocutory order that falls within one of the exceptions to the final judgment requirement.  Bessette v. Weitz, 148 Md. App. 215, 232 (2002) (citing Md. Code (1974, 2002 Repl. Vol.) Cts. & Jud. Proc. ("CJP") §§ 12-301, 12-303).  Under Maryland Rule 2-602(a)(1), a decision that "adjudicates the rights and liabilities of fewer than all the parties to the action . . . is not a final judgment."  Thus, for a judgment to be considered final, it must "be intended by the court as an unqualified, final disposition of the matter in controversy . . . ," Rohrbeck v. Rohrbeck, 318 Md. 28, 41 (1989), and "dispose[]. . . of all claims against all parties and conclude[] the case."  Miller and Smith at Quercus, LLC v. Casey PMN, LLC, 412 Md. 230, 241 (2010).

---

[8] In his motion for reconsideration, Mr. Bartenfelder takes issue with our decision not to dismiss the Second Appeal.  He points out that he never actually filed a motion to dismiss, and he complains that we considered matters outside of the record by taking judicial notice of the record in Ms. Bartenfelder's bankruptcy case.  We were not required to defer issuing our decision simply because a party states an intention to file a motion to dismiss.  Under Rules 8-603(a)(4) and 8-602(c)(8), Mr. Bartenfelder was required to file a motion to dismiss based on mootness within 10 days after the case became moot.  Because Mr. Bartenfelder's assertion of mootness was based on his payment of funds into the court registry, which he did on February 4, 2020, Mr. Bartenfelder's right to move to dismiss on that basis was long past due.  Nevertheless, we treated his response to the Show Cause Order as a motion to dismiss and addressed the issue "preemptively," just as he suggested.  And because he referenced Ms. Bartenfelder's bankruptcy proceedings in asserting that the appeal was moot, we appropriately took judicial notice of other filings in the same bankruptcy proceeding.  In addition, we note that Mr. Bartenfelder does not contend in his motion for reconsideration that our understanding of the relevant facts was incorrect.

The corollary to this general rule is that ordinarily, interlocutory orders are not appealable. See Nnoli v. Nnoli, 389 Md. 315, 324 (2005) ("An order that is not a final judgment is an interlocutory order and ordinarily is not appealable . . . ."). An interlocutory order may be appealed, however, if an immediate appeal is authorized by a statute, if it falls within the collateral order doctrine,[9] or if the circuit court directs the entry of a final judgment pursuant to Maryland Rule 2-602. Salvagno v. Frew, 388 Md. 605, 615 (2005).

Here, both the initial and amended complaints asserted claims with respect to the LLC. Both the First Order and the Second Order, however, applied *only* to the claims related to the Corporations. Accordingly, irrespective of which complaint is operative, there has not been a final judgment as defined by Maryland Rule 2-602(a), and the circuit court did not direct entry of a final judgment under Rule 2-602(b).

The statutory exceptions to the final judgment rule are enumerated in CJP § 12-303. One such exception, found in CJP § 12-303(3)(v), applies here. This subsection allows for an interlocutory appeal of an order "[f]or the sale, conveyance, or delivery of real or personal property or payment of money. . . ."[10] Stock is considered personal property,

---

[9] "To qualify as a collateral order, a ruling must satisfy four criteria: '(1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment.'" McLaughlin v. Ward, 240 Md. App. 76, 88 (2019) (quotations omitted).

[10] CJP § 12-303 provides:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;

(2) An order granting or denying a motion to quash a writ of attachment; and

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction;

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination;

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules;

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article;

(ix) Granting a petition to stay arbitration pursuant to § 3-208 of this article;

(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order; and

(xi) Denying immunity asserted under § 5-525 or § 5-526 of this article.

<u>Shenker v. Laureate Educ., Inc.</u>, 411 Md. 317, 346 (2009) (citation omitted), and the Second Order constituted an order to compel the sale of Ms. Bartenfelder's stock to Mr. Bartenfelder.

Further, the "payment of money," as used in CJP § 12-303(3)(v), refers to such orders that have "traditionally been rendered in equity." <u>Anthony Plumbing of Maryland, Inc. v. Attorney General of Maryland</u>, 298 Md. 11, 20 (1983). As explained below, the purchase right under CA § 4-603 is triggered by a petition for dissolution under CA § 4-602. Under CA § 4-602(a), the petition for dissolution is filed in "a court of equity," and that same court of equity enforces the purchase election by appointing appraisers, establishing the purchase price of the stock based on the appraisers' report, and setting the payment terms for the stock, all pursuant to the applicable provisions of the statute. The Second Order requiring Mr. Bartenfelder to pay for the stock was issued pursuant to the court's equitable powers and therefore qualifies as an appealable interlocutory order under CJP § 12-303(3)(v). <u>Cf.</u> <u>Md. State Bd. of Educ. v. Bradford</u>, 387 Md. 353, 386 (2005) (order compelling borrower to pay balance of loan to lender held immediately appealable as an order for payment of money under CJP § 12-303(3)(v)).[11] Further, because the merits of the First Order are necessarily implicated in a review of the Second Order, the First Order is reviewable on appeal from the Second Order. <u>See</u> <u>Frey v. Frey</u>, 298 Md. 552, 556-57 (1984); <u>see</u> <u>also</u> <u>Davis v. Attorney General</u>, 187 Md. App. 110, 122-23 (2009).

---

[11] Having identified an applicable exception under CJP § 12-303, we need not address whether either the First Order or Second Order qualifies under the collateral order exception.

15

The substantive issue presented in this appeal is whether Ms. Bartenfelder's complaint triggered the buy-out right in CA § 4-603(a), which provides:

> Any one or more stockholders who desire to continue the business of a close corporation may avoid the dissolution of the corporation *or* the appointment of a *receiver* by electing to purchase the stock owned by the petitioner at a price equal to its fair value.

(emphasis added.)

*The Parties' Contentions*

Ms. Bartenfelder argues that the word "receiver" applies only to receivers appointed by the court in a corporate dissolution proceeding, and that her complaint requested the appointment of a receiver of an entirely different kind: an equitable receiver. Ms. Bartenfelder contends, therefore, that her complaint did not trigger the buy-out right under CA § 4-603(a).

Mr. Bartenfelder counters that subsection (a) does not distinguish between statutory and equitable receivers—it simply uses the word "receiver." He further argues that the use of the disjunctive "or" in the phrase "dissolution or appointment of a receiver" means that the receiver need not be appointed in a dissolution proceeding, and that the buy-out right is triggered when a receiver of either kind (statutory or equitable) is requested. In any event, Mr. Bartenfelder argues that because Ms. Bartenfelder's complaint requested the appointment of a receiver with the same authority conferred by Maryland's dissolution statute, his purchase right under the dissolution statute was triggered. According to Mr.

Bartenfelder, the circuit court correctly determined that he exercised his valid buy-out right under CA § 4-603.

*Close Corporations*

A close corporation is a creature of statute that allows a small business to operate like a partnership, although in a corporate form. William G. Hall, Jr., <u>The New Maryland Close Corporation Law</u>, 27 Md. L. Rev. 341, 341 (1967). A close corporation typically has few stockholders, active stockholder participation in the business, no liquid market for the stock, close personal relationships between or among the stockholders, flexibility to operate without a board of directors, and few, if any, of the corporate formalities required of general corporations.[12] <u>Id.</u> at 341-42.

The distinguishing feature of a close corporation most relevant here is the restraint placed on the ability of stockholders to transfer their stock. See <u>Uninsured Employers'</u>

---

[12] Maryland jurisprudence sometimes confuses a close corporation with a closely-held corporation by using the terms interchangeably. A close corporation is formed when an election is made pursuant to CA § 4-201. As we previously explained:

> Unlike "close corporations," which are defined by statute in Maryland, a closely held corporation has "no single, generally accepted definition." *Donahue v. Rodd Electrotype Company of New England*, 367 Mass. 578, 328 N.E.2d 505, 511 (1975). However, closely held corporations commonly possess the following attributes: "(1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." *Donahue*, 328 N.E.2d at 511; *see* F. Lodge O'Neal & Robert B. Thompson, O'Neal & Thompson's Close Corporations and LLCs: Law and Practice § 1:2, 4-5 (3rd ed. 2004).

<u>Edenbaum v. Schwarcz-Osztreicherne</u>, 165 Md. App. 233, 247 (2005) (footnote omitted).

17

Fund v. Lutter, 342 Md. 334, 340 n.3 (1996). By default, and unlike other types of Maryland corporations, stock in a close corporation is not transferrable without the consent of the other stockholders. See CA § 4-503(b).[13] The rationale is that in such an intimate business relationship, people should have the right to choose their partners. See Hall, supra, at 351.

A natural consequence of this default restriction, however, is that, in the absence of consent to transfer stock, a stockholder can be trapped in an investment that, for whatever reason, is no longer desired. To address this predicament, CA § 4-602 gives the trapped stockholder the right to seek a dissolution of the corporation if consent is denied or for certain other enumerated reasons, thus enabling the stockholder to receive value for the stock through the liquidation of the company.

Standing alone, such dissolution rights would tip the balance of power in favor of the stockholder who wants to exit the company and against the stockholder who wants to continue with the business. To level the playing field, CA § 4-603 gives a stockholder the ability to prevent the dissolution, or the appointment of a receiver, by electing to purchase

---

[13] CA § 4-503(b) provides:

> A transfer of the stock of a close corporation is invalid unless:
>
> (1)  Every stockholder of the corporation consents to the transfer in writing within the 90 days before the date of the transfer; or
> (2)  The transfer is made under a provision of a unanimous stockholders' agreement permitting the transfer to the corporation or to or in trust for the principle benefit of:
> (i)   One or more of the stockholders or security holders of the corporation or their wives, children, or grandchildren; or
> (ii)  One or more persons named in the agreement.

18

the stock of the dissolution-seeking stockholder. See Hall, supra, at 349. As our analysis below shows, however, this purchase right applies *only* in the context of a dissolution proceeding.

*Construing CA § 4-603*

We begin with the principles of statutory construction that guide our inquiry. Our objective in interpreting any statute is to understand and implement the General Assembly's intent. See Stoddard v. State, 395 Md. 653, 661 (2006). We start with the statute's plain language which, if clear and unambiguous, will be enforced as written. Id. We pay attention to the statute's grammar and sentence structure. See Mazor v. State Dep't of Correction, 279 Md. 355, 362 (1977). Further, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." Beyer v. Morgan State University, 139 Md. App. 609, 631 (2001) (quotations omitted).

We do not read a statutory provision in isolation. Instead, we consider its purpose, goal, and context as a whole. Papillo v. Pockets, Inc., 119 Md. App. 78, 83-84 (1997). Examining the context of the statute includes construing provisions within the same section harmoniously, if possible. George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay, 197 Md. App. 586, 628 (2011).

If the words of the statute are ambiguous, we look at its structure (including its caption), context, relationship with other laws, and legislative history, among other indicia of intent. Stoddard, 395 Md. at 662-63. Even if the words are unambiguous, a review of the legislative history may, in certain contexts, be useful to confirm its interpretation or to

19

rule out "another version of legislative intent alleged to be latent in the language."

<u>Blackstone v. Sharma</u>, 461 Md. 87, 113 (2018) (quotation omitted).

Although the specific provision at the center of this dispute is found in the first sentence of CA § 4-603(a), our mandate to construe the relevant provisions in their proper context requires our examination of both CA § 4-603 and the immediately preceding section, CA § 4-602.  We therefore begin with the complete text of both sections, bolding for convenience the words and phrases which are discussed in our analysis below:

§ 4-602.  ***Involuntary dissolution.***

(a)    ***Dissolution by stockholder generally***. – Any stockholder of a close corporation **may petition a court of equity for dissolution** of the corporation on the grounds set forth in **§ 3-413** of this article or on the ground that there is such internal dissension among the stockholders of the corporation that the business and affairs of the corporation can no longer be conducted to the advantage of the stockholders generally.

(b)    ***Dissolution by stockholder desiring to transfer stock***. –
(1) Unless a unanimous stockholders' agreement provides otherwise, a stockholder of a close corporation **has the right to require dissolution** of the corporation if:
    (i) The stockholder made a written request for consent to a proposed bona fide transfer of his stock in accordance with the provisions of § 4-503(b)(1) of this title, specifying the proposed transferee and the consideration, and the consent was not received by him within 30 days after the date of the request; or
    (ii) Another party to a unanimous stockholders' agreement defaulted in an obligation, set forth in or arising under the agreement, to purchase or cause to be purchased stock of the stockholder, and the default was not remedied within 30 days after the date for performance of the obligation.
(2) A **petition for dissolution** under this subsection shall be filed within 60 days after the date of the request or the default, as the case may be.

(c)　*Proceeding to be in accordance with § 3-414.* – A **proceeding for dissolution** authorized by this section shall be in accordance with the provisions of § 3-414 of this article.

§ 4-603.　*Avoidance of dissolution by purchase of petitioner's stock.*

(a)　*Stockholder's right to avoid dissolution.* – Any one or more stockholders **who desire to continue the business** of a close corporation may **avoid the dissolution of the corporation or the appointment of a receiver** by electing to purchase the stock owned by the **petitioner** at a price equal to its fair value.

(b)　*Court to determine fair value of stock.* –
(1) If a stockholder who makes the election is unable to reach an agreement with the **petitioner** as to the fair value of the stock, then, if the electing stockholder gives bond or other security sufficient to assure payment to the **petitioner** of the fair value of the stock, the court shall stay the proceeding and determine the fair value of the stock.
(2) Fair value shall be determined in accordance with the procedure set forth in Title 3, Subtitle 2 of this article, as of the close of business **on the day on which the petition for dissolution was filed**.

(c)　*Court order.* – After the fair value of the stock is determined, the order of the court directing the purchase shall set the purchase price and the time within which payment shall be made.  The court may order other appropriate terms and conditions of sale, including:
(1) Payment of the purchase price in installments; and
(2) The allocation of shares of stock among electing stockholders.

(d) *Interest on purchase price; cessation of other rights.* – The **petitioner**:
(1) Is entitled to interest on the purchase price of his stock from the date the **petition** is filed; and
(2) Ceases to have any other rights with respect to the stock, except the right to receive payment of its fair value.

 (e)　*Costs of proceeding.* – The costs of the proceeding, as determined by the court, shall be divided between the **petitioner** and the purchasing stockholder.  The costs shall include the reasonable compensation and expenses of appraisers, but may not include fees and expenses of counsel or of other experts retained by a party.

(f) *Transfer of stock*. – The **petitioner** shall transfer his shares of stock to the purchasing stockholder:
> (1) At a time set by the court; or
> (2) If the court sets no time, at the time the purchase price is paid in full.

(italics and bold in the original; bold added.)

Mr. Bartenfelder's argument has this in its favor: the phrase "or appointment of a receiver" in CA § 4-603(a) does not contain any qualifying language to limit its application to a specific type of receiver. This fact, however, loses its interpretive force if we broaden our aerial view and construe it in the context of its surrounding provisions. In this regard, we make four general observations from our examination of the text of CA § 4-602 and CA § 4-603.

First, the captions or "catchlines" given to the sections and subsections inform us that the subject matter of the provisions is the dissolution of a close corporation. Section 4-602 is captioned "Involuntary Dissolution" and § 4-603 is captioned "Avoidance of dissolution by purchase of petitioner's stock." Moreover, the specific subsection at issue here, CA § 4-603(a), is captioned "Stockholder's right to avoid dissolution."

Mr. Bartenfelder dismisses these captions as the work product of the publisher, and therefore contends they carry no substantive weight. Ordinarily, he would be correct. Md. Code Ann. General Provisions Article ("GP") § 1-208 (2014) ("Unless otherwise provided by law, the caption or catchline of a section or subsection that is printed in bold type, italics, or otherwise . . . is intended as a mere catchword to indicate the contents of the section or subsection . . ."); see also Preface, GP at 10 ("Headings or 'catchlines' for Code sections and subsections are generally created and maintained by the publisher.").

22

On rare occasions, however, the captions are written by the General Assembly. When that occurs, the normal rule of construction set forth in GP § 1-208 is inapplicable and we are permitted to look to the captions to assist our search for the legislature's intent. Smelser v. Criteria Ins. Co., 293 Md. 384, 386-87 n.2 (1982). Here, the captions to the sections were part of the bills the General Assembly considered when it enacted the statute.[14] The captions assigned to CA § 4-602 and CA § 4-603, therefore, support our conclusion that the purchase right applies only in a dissolution proceeding.

Second, the opening words of CA § 4-603(a) expressly confirm what its caption indicates—the purchase right exists to spare the company from extinction. The phrase "stockholders who desire to continue the business of a close corporation" implies an impending termination of the business.

Third, throughout CA § 4-603, some variation of the base word "petition" is used, the meaning of which is discernable only in the context of CA § 4-602. Specifically: (1) CA § 4-603(a) refers to the seller's stock as the "stock owned by the *petitioner*"; (2) CA § 4-603(b)(1) refers to "an agreement with the *petitioner*" and "payment to the *petitioner*"; (3) CA § 4-603(b)(2) refers to "*petition* for dissolution"; and (4) CA § 4-603(d) is captioned "*Petitioner's* rights" and uses either "*petition*" or "*petitioner*" in four places. The use of a variation of "petition" throughout CA § 4-603 makes sense only when construed in

_____

[14] In 1967, when this statute was first enacted, it was captioned in the session law as "Judicial Dissolution—Close Corporations." See 1967 Md. Laws, Ch. 649 § 109; Md. Code (1957, 1967 Repl. Vol., 1967 Cum. Supp.), Art. 23 § 109 (now codified, as amended, at CA § 4-603). In 1975, when this statute was re-codified as CA § 4-603, it was captioned: "AVOIDANCE OF DISSOLUTION BY PURCHASE OF PETITIONER'S STOCK." See 1975 Md. Laws, Ch. 311, CA § 4-603.

conjunction with CA § 4-602. In other words, the "petitioner" as used throughout CA § 4-603—including in its caption—is the stockholder seeking the dissolution in CA § 4-602(a), and the "petition for dissolution" in CA § 4-603(b) is the "petition for dissolution" referenced in CA § 4-602(b)(1)(ii).

Fourth, it would be impossible to consummate the purchase and sale transaction in the manner contemplated under the plain language of CA § 4-603 in any context *other* than a dissolution proceeding. There cannot be a transaction without first determining the price, and under CA § 4-603(a), the price of the stock is "equal to its fair value." Under CA § 4-603(b), the fair value "shall be determined . . . as of the close of business on the day on which *the petition for dissolution* is filed." Compliance with that provision would be impossible unless there is, in fact, a petition for dissolution.

*Understanding CA § 4-603 within the*
*Context of Maryland General Corporation Law*

Mr. Bartenfelder argues that by limiting the applicability of the purchase right to a dissolution proceeding, we would be rendering the phrase "or the appointment of a receiver" meaningless, which, of course, is discouraged when construing statutes. See Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park, 392 Md. 301, 316 (2006) (citation omitted). We can, however, avoid this pitfall if we adhere to the canon of construction requiring us to construe CA § 4-603 in the context of other relevant statutory provisions, which in this case includes the provisions applicable to all Maryland corporations. See George Wasserman & Janice Wasserman Goldsten Family, 197 Md. App. at 628. We explain.

24

Maryland corporations are governed by Titles 1 through 3 of the Corporations and Associations Article, which have been assigned the short title "Maryland General Corporation Law." See CA § 1-103. Title 3 includes the involuntary dissolution provisions for Maryland corporations in general. CA § 3-413 defines the grounds for an involuntary dissolution, and CA § 3-414 establishes the process for an involuntary dissolution proceeding. Both provisions are applicable to close corporations as well.

Specifically, as noted above, CA § 4-602 sets forth the grounds and process for dissolving a close corporation. Among other enumerated grounds, CA § 4-602(a) incorporates the grounds set forth in CA § 3-413,[15] and CA § 4-602(c) incorporates the

---

[15] CA § 3-413 provides:

(a)     Except as provided in subsection (d) of this section, stockholders entitled to cast at least 25 percent of all the votes entitled to be cast in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that:
   (1)   The directors are so divided respecting the management of the corporation's affairs that the votes required for action by the board cannot be obtained; or
   (2)   The stockholders are so divided that directors cannot be elected.

(b)     Except as provided in subsection (d) of this section, any stockholder entitled to vote in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that:
   (1)   The stockholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms would have expired on the election and qualification of their successors; or
   (2)   The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.

(c)     Any stockholder or creditor of a corporation other than a railroad corporation may petition a court of equity to dissolve the corporation on

process established in CA § 3-414.[16]  It is through these connections that we can make

sense of the phrase "or the appointment of a receiver" in CA § 4-603(a).

CA § 3-414 authorizes a court to appoint two types of receivers in an involuntary

dissolution proceeding. First, in recognition of the potential for corporate misconduct as

grounds that it is unable to meet its debts as they mature in the ordinary course of its business.

(d)     Subsections (a)(2) and (b)(1) of this section do not apply to any corporation that has a class of equity securities registered under the federal Securities Exchange Act of 1934.

[16] CA § 3-414 provides:

(a)     This section applies to any proceeding for involuntary dissolution of a corporation, except one brought under § 3-413(c) of this subtitle on grounds of insolvency.

(b)     In a proceeding for the involuntary dissolution of a corporation, after notice and hearing, the court:
    (1)   May appoint one or more temporary receivers or trustees to take charge of the assets and operate the business of the corporation, if necessary or proper to preserve them, pending a final determination as to dissolution; and
    (2)   Shall determine whether the corporation should be dissolved.

(c)     If it appears that the corporation should be dissolved, the court shall enter a final order dissolving the corporation, and direct that it be liquidated under court supervision by one or more receivers appointed by it.

(d)     A receiver, temporary receiver, or trustee has all the powers of a receiver provided in this subtitle and any other powers provided in the order of the court, including the power to continue the corporate business.

(e)     If it orders dissolution, the court may provide by order:
    (1)   For the distribution in kind of the assets of the corporation to the stockholders; or
    (2)   For some stockholders to receive assets of a different nature than other stockholders having the same type of interest.

26

the litigation proceeds, the court *may* appoint a temporary receiver "to take charge of the assets and operate the business of the corporation, if necessary or proper to preserve them, pending a final determination as to dissolution." CA § 3-414(b)(1). Second, if the court is ultimately persuaded that the corporation should be dissolved, it *must* "enter a final order dissolving the corporation, and direct that it be liquidated under court supervision by one or more receivers appointed by it." CA § 3-414(c). Accordingly, the phrase "or the appointment of a receiver" in CA § 4-603(a) refers to the two types of receivers— temporary and liquidating—expressly contemplated under CA § 3-414.

Although we need not identify every circumstance in which the phrase "or the appointment of a receiver" in CA § 4-603(a) could become relevant, there is one potential scenario that comes to mind. A non-petitioning stockholder who wants to continue the business but does not want to increase his ownership interest in the company, may choose not to exercise the purchase right, perhaps on the belief that the petition for dissolution will ultimately fail. But, that same stockholder may later have a change of heart if, during the litigation, a temporary receiver is requested under CA § 3-414(b)(1). At that point, the non-petitioning stockholder may exercise the purchase right to prevent the intrusion and meddling of a court appointed receiver. The phrase "or appointment of a receiver" is, therefore, not rendered superfluous if the purchase right is limited to a dissolution proceeding.[17]

---

[17] One could point out that there is no time deadline in CA § 4-603 for exercising the purchase right to avoid the dissolution, therefore, the additional trigger of an "appointment of receiver" would not be necessary. That response would overlook the

An examination of the legislative history of the statute confirms our conclusion that the purchase right in CA § 4-603(a) applies only in dissolution proceedings. First, it shows that the legislative purpose is served only if the purchase right is triggered in a dissolution proceeding. We discussed the legislative purpose of the purchase right in Papillo, 119 Md. App. at 83-90, where we were asked to determine whether the purchase election, once made, is revocable at will. In finding that the electing shareholder may revoke the election only at the discretion of the court, our analysis rested on the premise that the purchase right existed to foster "a fair accommodation of the conflicting interests involved, on the one hand the desire to continue a profitable enterprise, and on the other, a desire to secure reasonable value for one's ownership interest." Id. at 86 (quoting Hall, supra, at 362).[18]

---

potential waiver argument that the petitioning stockholder could assert in response to a belated election. A waiver argument would be particularly compelling if, between the filing of the petition and the election, the value of the company increased, perhaps reflected through an offer to purchase the company. In that scenario, the non-petitioning shareholder could use the purchase right as an arbitrage opportunity by acquiring the petitioner's stock at its fair value on the day the petition was filed, and thereby capture the increase in value attributable to the petitioner's stock. A successful waiver argument would prevent the non-petitioner from engaging in such opportunistic behavior.

[18] See also Final Report of the Commission on Revision of the Corporation Laws of Maryland, December 15, 1966 (the "Report"), at 74-75. The Report, which was issued before the statute was enacted, explained:

> . . . since one of the main objectives of the subtitle is to provide for situations in which a close personal relationship exists, the question of the scope of required or permitted transferability of shares was of substantial concern. A number of solutions were considered, and it was concluded that some method of restricting corporations which may make the election [to be a close corporation] and providing for restrictions on transfer probably should be

This purpose would not be served if the request for an equitable receiver to prevent alleged misconduct, but not to liquidate the company, would trigger the purchase right.

Second, an examination of the original text of the statute shows that purchase right provision was expressly limited to a dissolution proceeding. The close corporation statute was enacted in 1967. See 1967 Md. Laws, Ch. 649. Although the statute was re-codified

---

provided in the statute. The proposed subtitle seeks to meet both these objectives together in Sections 101 and 109, by providing in effect that all stock of close corporations shall be transferable *only by current consent of all stockholders* or in the manner set forth by an agreement of the parties (if any) providing for stock purchase or offering arrangements among the owners, the corporation and named third parties, or any one or more of them. Under the proposal, the owners of a close corporation will thus have freedom of contract to provide their own restrictions in the first instance, and free transferability will be modified in the absence of such a provision. However, in order to provide a reasonable situation for the party who wishes to sell his stock, Section 102 gives such party the right, unless otherwise provided by a stockholders' agreement, to initiate dissolution proceedings in the event that the other owners do not consent to a proposed transaction; but in such case, under Section 109(b) and (c), one or more of the other stockholders may then protect their interest in continuing the corporate enterprise by purchasing at an appraised value *the shares of the owner desiring to sell his stock. . . .*

Again recognizing that the subtitle is designed to provide for situations in which the parties are in a practical relationship in some ways more analogous to partners than to stockholders of a large corporation, Section 109(a) grants a broader ground for dissolution than is to be found in the general corporation law. However, for all judicial dissolutions of close corporations stockholders other than the party moving for dissolution may, in appropriate cases and subject to the discretion of the court, avoid dissolution by purchasing the shares of the petitioner at a fair appraised value, except where there is a contrary stockholders' agreement with respect to a dissolution proceeding initiated under Section 102.

Id. at 74-75 (emphasis added).

in 1975, <u>see</u> 1975 Md. Laws, Ch. 311, the original language nevertheless aids our analysis because the changes to the relevant sections were intended to be stylistic, not substantive. <u>Papillo</u>, 119 Md. App. at 86; <u>see also</u> State of Maryland Governor's Commission to Revise the Annotated Code, Commission Report No. 1975-2, Revised Article on Corporations and Associations [S.B. 330] at 2.

When initially enacted, the dissolution provisions for close corporations now found in CA § 4-602 and CA § 4-603 were set forth within a single section, Article 23, § 109.[19]

---

[19] Section 109 of Article 23 provided:

> 109.    Judicial Dissolution-Close Corporations.
>
> (a)     In addition to the right to petition for dissolution provided in Section 79A of this Article, any stockholder of a close corporation may petition a court of equity of the county in which the principal office of the corporation is located, for dissolution of the corporation on the ground that there is such internal dissension among the stockholders of the corporation that the business and affairs of the corporation can no longer be conducted to the advantage of the stockholders generally.
>
> (b)     Any proceeding for dissolution of a close corporation authorized by this Section shall be in accordance with the provisions of Section 79A (c) of this Article.
>
> (c)     Any one or more stockholders desiring to continue the business of a close corporation may avoid the dissolution of the corporation or the appointment of a receiver under this Section or under Section 79A of this Article by electing to purchase the shares of stock owned by the petitioner at a price equal to their fair value. If stockholders making such election are unable to reach an agreement with the petitioner as to the fair value of his shares, the court shall, upon the stockholders' giving bond or other security sufficient to assure to the petitioner payment of the value of his shares, stay the proceeding and proceed to determine the value of the shares, in accordance with the

That fact alone tells us that CA § 4-602 and CA § 4-603 have always been intended to be construed together.

Moreover, the original text of the purchase right contained qualifying language that goes right to the heart of the question before us. The purchase right was set forth in § 109(c), which stated in relevant part:

> Any one or more stockholders desiring to continue the business of a close corporation may avoid the dissolution of the corporation or the appointment of a receiver **under this Section or under Section 79A of this Article** by electing to purchase the shares of stock owned by the petition at a price equal to their fair value. . . .

Article 23, § 109(c) (emphasis added).

---

procedure set forth in Section 73 (f) of this Article, as of the close of business on the day on which the petition for dissolution was filed. Upon determining the fair value of the stock, the court shall set forth in its order directing that the stock be purchased, the purchase price and the time within which the payment shall be made, and may decree such other terms and conditions of sale as it determines to be appropriate, including payment of the purchase price in instalments extending over a period of time, AND THE ALLOCATION OF SHARES AMONG STOCKHOLDERS ELECTING TO PURCHASE THEM. The petitioner shall be entitled to interest on the purchase price of his shares from the date of the filing of the election for a determination of appraised value and all other rights of the petitioner as an owner of the shares shall terminate at such date. The costs of the proceeding shall be determined by the court and shall be divided between the petitioner and the purchasing stockholders. Cost shall include reasonable compensation and expenses of appraisers but shall not include fees and expenses of counsel or of experts retained by a party. Upon full payment of the purchase price, under the terms and conditions specified by the court, or at such other time as may be ordered by the court, the petitioner shall transfer the shares of stock to the purchasing stockholder.

31

The difference between the initial version and the current version is that the original included the phrase "under this Section or under Section 79A of this Article." From a grammatical standpoint, this phrase limited the purchase right of a non-petitioning stockholder to either of two scenarios: (1) to avoid the dissolution of a close corporation under § 109 or § 79A, or (2) to avoid the appointment of a receiver over a close corporation under § 109 or § 79A.

Section 109 was, as noted above, the predecessor to CA § 4-602 and CA § 4-603 and established the dissolution and buy-out right in the context of an involuntary dissolution of a close corporation. The other section referenced in this phrase—Section 79A—was the predecessor to CA § 3-413 and CA § 3-414,[20] and established the general

---

[20] Section 79A of Article 23 provided:

79A. Judicial Dissolution—Deadlocks; Illegal, Oppressive or Fraudulent Acts.

(a)      The holders of shares entitled to not less than twenty-five percent of all the votes entitled to be cast for the election of directors may petition a court of equity to dissolve the corporation, on one or both of the following grounds:
>    (1)      That the directors are so divided respecting the management of the corporation's affairs that the votes required for action by the board cannot be obtained.
>    (2)      The stockholders are so divided that the votes required for the election of directors cannot be obtained.

(b)      Any holder of shares entitled to vote at an election of directors of a corporation may petition a court of equity to dissolve the corporation on one or both of the following grounds:

>    (1)      That the stockholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates,

rights of stockholders to petition a court for the dissolution, as well as the appointment of a temporary and permanent receiver in a dissolution proceeding. Noticeably missing from both Section 109 and Section 79A is the authority to appoint a receiver in any context other than in a dissolution proceeding. Thus, under the express qualifying language of the original text, the buy-out right existed only in a dissolution proceeding. And, it bears repeating, because the changes in the re-codified version were intended to be only stylistic and not substantive, that limitation remains the case today.

---

to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors.
(2)     That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent.

(c)     In any proceeding for the dissolution of a corporation under this section the court, within its sound judicial discretion and after notice and hearing, (i) may appoint one or more temporary receivers or trustees to take charge of the assets and business of the corporation if deemed necessary or appropriate to preserve the business and assets of the corporation pending a final determination as to dissolution; and (ii) shall determine whether the corporation should be dissolved. If it shall appear that the corporation should be dissolved, the court shall make a judgment or a final order dissolving the corporation, and shall order that the corporation be liquidated under its supervision by one or more receivers appointed by the court. Any receiver, temporary receiver or trustee shall have all the powers of a receiver provided in Section 81 of this Article and such other powers, including the power to continue the corporate business, as may be provided by order or decree of the court. In any liquidation under an order of dissolution, the court shall have power by order or decree to provide for the distribution of assets of the corporation to stockholders in kind, and to provide that some stockholders shall receive cash or property of a different nature than other stockholders having the same type of interest, all within the sound judicial discretion of the court.

Mr. Bartenfelder also argues that CA § 4-603 applies to Ms. Bartenfelder's complaint because she requested the appointment of a receiver with statutory powers—that is, the powers authorized by CA § 3-414. Mr. Bartenfelder contends that "a shareholder cannot seek relief for oppression without stating a cause of action that arises under [CA] § 3-413, governing petitions for dissolution." He further argues that the authority of a court to award "equitable relief short of dissolution" is found only under CA § 3-413. Mr. Bartenfelder claims support for his argument in both Edenbaum v. Schwarcz-Osztreicherne, 165 Md. App. 233 (2005) and Bontempo v. Lare, 444 Md. 344 (2015).

Mr. Bartenfelder's attempt to shoehorn Ms. Bartenfelder's complaint into the dissolution statutes is unpersuasive. On its face, the only cause of action conferred by CA § 3-413 is the right to seek a dissolution of the corporation on specific, enumerated grounds. Edenbaum and Bontempo do not say otherwise, but instead teach that dissolution is not the only remedy available in a case of shareholder oppression.

Edenbaum, 165 Md. App. at 238, involved a claim for dissolution pursuant to CA § 3-413(b)(2), based on allegations of oppressive conduct. The alleged oppressive conduct was the termination of the minority stockholder's employment with the corporation. Id. at 255. We held that the termination of the minority stockholder's employment in that instance constituted "oppression" under CA § 3-413(b)(2). Id. at 261. As for the appropriate remedy, we held that CA § 3-413 empowers, but does not compel, a court to dissolve a corporation upon a finding of oppression, and given the drastic nature of that

remedy, courts should first look for "alternative equitable remedies not specifically stated in the statute." Id. at 260. Following the approach of one of our sister states, we offered a non-exhaustive list of potential equitable remedies short of dissolution, including the appointment of a non-liquidating receiver to continue the operations of the corporation for the benefit of all stockholders. Id. at 260-61.

We had another opportunity to discuss the remedies for shareholder oppression in Bontempo. Speaking for this Court, Judge Nazarian articulated the rationale behind our decision in Edenbaum in a manner particularly apt to our analysis here:

> Because dissolution is an irrevocable all-or-nothing remedy, we expressed a concern shared by courts in other states: allowing minority shareholders to force dissolution too easily risked shifting too much power to them. We decided, therefore, to join other states that recognize remedial measures short of dissolution, and we adopted a list of alternative remedies described in *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387, 395-96 (1973), for the circuit court to consider on remand[.]

Bontempo v. Lare, 217 Md. App. 81, 117-18 (2014), aff'd., 444 Md. 344 (2015) (cleaned up). Relying on Edenbaum, we further held that an oppressed stockholder may seek, among other forms of relief, an equitable remedy short of a dissolution. Id. at 114. The Court of Appeals adopted our approach, stating, among other things, that "a court of equity may employ other equitable tools, short of dissolution, to remedy shareholder oppression." Bontempo, 444 Md. at 348.

Mr. Bartenfelder's reliance on Edenbaum and Bontempo is, therefore, misplaced. Ms. Bartenfelder was entitled to seek an equitable remedy short of dissolution without

triggering the rights of a non-petitioning stockholder in a dissolution proceeding.[21] That's precisely what she did when she filed a complaint seeking the appointment of a receiver vested with equitable powers short of a dissolution.[22]

---

[21] In his motion for reconsideration, Mr. Bartenfelder persists with his argument that, under Edenbaum and Bontempo, the right to seek an equitable receiver arises only under CA § 3-413, even though dissolution is the only remedy for shareholder oppression specified in that section. As explained above, both cases hold that if a dissolution is requested under CA § 3-413, the court may nevertheless fashion equitable relief short of a dissolution to remedy the shareholder oppression. From this holding, Mr. Bartenfelder advances the logically faulty argument that if an oppressed shareholder requests equitable relief short of a dissolution, e.g., the appointment of a receiver to run the company, then the dissolution provisions of CA §§ 3-413 and 3-414 have been automatically invoked, intentionally or not. We reject that logic in favor of this simple proposition: because the court, under Edenbaum and Bontempo, has the authority to grant equitable relief short of dissolution when the dissolution statute is invoked, a party can request such relief without invoking the dissolution statute. Or, phrased slightly differently: if an equitable receiver is an available remedy when the dissolution statute *is* invoked, then an equitable receiver is surely an available remedy when the dissolution statute is *not* invoked. Ms. Bartenfelder stayed clear of the dissolution statute by requesting precisely the form of an equitable receiver that Edenbaum contemplated as an alternative to dissolution.

[22] In his brief, Mr. Bartenfelder argues that Ms. Bartenfelder "alleged that she was 'entitled to dissolution of the Businesses' under CA § 4-602[.]" On that basis, Mr. Bartenfelder would have us conclude that such a statement proves that Ms. Bartenfelder invoked the dissolution statute in her complaint. In our initial opinion, we rejected that argument without acknowledging it. Mr. Bartenfelder raised the same argument in his motion for reconsideration, and although we reject it again, this time we briefly explain why.

Simply put, although Mr. Bartenfelder quoted accurately from Ms. Bartenfelder's memorandum in support of her motion for a temporary restraining order, he took the quote completely out of context. In the very next sentence, which Mr. Bartenfelder did not mention, Ms. Bartenfelder made clear that she was specifically *not* requesting a dissolution, that she only wanted the "far less drastic remedy" of an equitable receiver. In other words, Ms. Bartenfelder was essentially saying: "On these facts I could, if I wanted to, seek the dissolution of the company, but I choose to pursue a less drastic remedy instead." When read in its full context, therefore, the statement attributed to Ms. Bartenfelder stood for the exact opposite of what Mr. Bartenfelder claimed.

The court's authority to appoint equitable receivers has long been a fixture in Maryland law. In Spivery-Jones v. Receivership Estate of Trans Healthcare, Inc., 438 Md. 330 (2014), the Court of Appeals examined the history of Maryland's receivership law and explained what came to be known as an "equitable receivership":

> Maryland recognizes two types of receiverships; a chancery receivership, the receivership which was developed in the chancery courts and which became part of our common law, as well as a statutory receivership that is "purely the creature[ ] of statutes and without which statutes no receiver could be appointed . . . ." Ralph E. Clarke, *A Treatise on the Law and Practice of Receivers* 22 (1918).
>
> Prior to 1868, only "equitable" or "chancery" receiverships existed or those that had their genesis in the chancery courts of England. Clarke, *supra*, at 6, 18. As initially created by the English chancery courts, the appointment of a receiver was a "remedy" designed to protect property that was subject to a claim between two parties from being dissipated, because injunctive relief had not proven to be effective. *Id.* The chancery court would appoint a "receiver," who would act as an officer of the court and take possession or custody of the property to preserve it for the person or entity to which it was entitled. *Id.*

438 Md. at 333-34 (internal footnotes omitted).

Equitable receivers have been appointed in partnership disputes, mortgagor-mortgagee disputes, and over disputed properties in divorce proceedings. Id. at 337 (citations omitted). Such appointments are reserved for extraordinary circumstances involving "fraud, danger of spoliation, or imminent prospect of loss or injury to property." Id. Equitable receivers have no authority, however, to dissolve a corporation. Id. Rather, the termination and liquidation of a corporate entity may only be accomplished pursuant to statute. Id. at 337-38.

Since 1868, Maryland courts have had the statutory power to dissolve corporations and, in that context, the concomitant statutory authority to appoint receivers to wind up a corporation's affairs. <u>Id.</u> at 339. Such authority has endured to this day and is currently found in CA § 3-411 and CA § 3-414. <u>Id.</u> at 339-40. Receivers of this kind are known as "'statutory receivers[,'] because their appointment exceeds that which generally was permitted in equity[.]" <u>Id.</u> at 341. Thus, the distinction between a statutory and equitable receiver remains firmly embedded in Maryland law. <u>Id.</u> That distinction drives the outcome in this case.

Ms. Bartenfelder's complaint requested the appointment of a receiver with authority to operate the companies, not to liquidate them. Thus, it is irrelevant that, as Mr. Bartenfelder contends, Ms. Bartenfelder asked the court to grant the receiver authority that could also be granted to a temporary receiver under CA § 3-414. <u>See id.</u> (explaining co-existence of statutory and equitable receivers); <u>see also</u> <u>Del-Mar-Va Hardware Corp. v. Boss Mfg. Co.</u>, 230 Md. 477, 479-80 (1962) (appointment of receiver was an error because the prerequisites of the relevant statutory provisions were not satisfied, and the petitioner lacked standing to seek an equitable receiver). The relevant, indeed, dispositive point is that Ms. Bartenfelder's complaint did not request a receiver vested with the one thing that separates equitable from statutory receivers: the power to dissolve the corporations. Ms. Bartenfelder's complaint, therefore, stayed on the equitable side of the Rubicon.

Accordingly, we are persuaded that because Ms. Bartenfelder's complaint did not request a dissolution under CA § 4-602, the purchase right under CA § 4-603(a) was not triggered, and therefore Ms. Bartenfelder was not compelled to sell her stock to Mr.

38

Bartenfelder.  This result aligns with the plain language as well as the structure and context of the statute, its legislative history, and the distinction between statutory and equitable receivers.  This result also has the added benefit of common sense: a stockholder who seeks equitable relief to stop alleged oppression should not have to do so at the risk of being forced to sell her stock to the alleged oppressor.

**MOTION TO DISMISS DENIED.  APRIL 30, 2018 RULING BY THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED.  ORDER ENTERED ON NOVEMBER 6, 2019 ALSO REVERSED. CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLEE.**